**CASE NO.: 25-13166**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

GLOBAL NETWORK MANAGEMENT, INC
*Plaintiff-Appellant*

v.

CIRION TECHNOLOGIES SOLUTIONS, LLC. f/k/a Lumen Technologies, Inc., f/k/a CenturyLink Latin. American Solutions, LLC, f/k/a Level 3 Latin American Solutions, LLC,
*Defendant-Appellee*

Appeal from the United States District Court for the
Southern District of Florida

LOWER TRIBUNAL CASE NO.: 20-cv-20723-JB

Law Offices of Andre G. Raikhelson, LLC.
7000 W Palmetto Park Road, Suite 210
Boca Raton, Florida 33433
Tel. 954-895-5566
Fax. 305-328-9012
Primary: arlaw@raikhelsonlaw.com

/s/ Andre G. Raikhelson
Andre G. Raikhelson, Esq.
Bar Number: 123657

CASE NO.: 25-13166
GLOBAL NETWORK MANAGEMENT, LTD v. CENTURYLINK LATIN AMERICAN SOLUTIONS, LLC

**Certificate of interested Persons and Corporate Disclosure Statement**

Plaintiff-Appellant, Global Network Management LTD, submits this list, which includes the trial judge, and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this review:

1. Becerra, Hon. Jacqueline, U.S. District Court Judge
2. Cirion Technologies, LLC., f/k/a Lumen Technologies, Inc. f/k/a CenturyLink Latin. American Solutions, LLC, f/k/a Level 3 Latin American Solutions, LLC, Defendant-Appellee
3. Dimond Kaplan & Rothstein, P.A.., Attorneys for Defendant-Appellee
4. Dimond, Scott M., Esq., Attorney for Defendant-Appellee
5. Global Network Management, Inc., Plaintiff-Appellant
6. Law Offices of Andre G. Raikhelson, Attorneys for Plaintiff-Appellant
7. Prüss, Lorenz Michel, Esq., Attorney for Defendant-Appellee
8. Raikhelson, Andre G., Esq., Attorney for Plaintiff-Appellant
9. Shamayev Law P.A., Attorneys for Plaintiff-Appellant

10.Shamayev, Stanislav A., Esq., Attorney for Plaintiff-Appellant

Pursuant to Federal Rule of Appellate Procedures 26.1 and Eleventh Circuit Rules 26.101 through 26.1-3, Plaintiff-Appellant, Global Network Management INC makes the following statement as to corporate ownership:

Global Network Management Inc. is a foreign company, not a publicly traded corporation, and no publicly held corporation owns 10% or more of its stock.

/s/ Andre G. Raikhelson
Andre G. Raikhelson, Esq.

## Statement Regarding Oral Argument

Based on the facts of the case, and the relatively complex nature of this instant appeal, oral argument is being sought behalf of Plaintiff-Appellant.

> NOTE: This Court allowed Oral Argument in a prior iteration of this case (*Glob. Network Mgmt., Ltd. v. CenturyLink Latin Am. Sols., Ltd. Liab. Co*., 67 F.4th 1312 (11th Cir. 2023)

## TABLE OF CONTENTS

*Certificate of interested Persons and Corporate Disclosure Statement*........*i*

*Statement Regarding Oral Argument*...............................................................*i*

*TABLE OF CONTENTS*......................................................................... *ii*

*TABLE OF AUTHORITIES*......................................................................*v*

*Statement Pertaining to Appendix*......................................................................*x*

*Jurisdictional Statement*......................................................................... *xi*

*Brief Statement of the Issues*......................................................................... *1*

*Statement of the Case and Statement of Facts*................................................ *2*

**A. Pertinent Facts and Appellate Procedural History**.........................**2**

**B. Defendant Filed Their First Motion for Summary Judgment**.......**7**

**C. Post Summary Judgment – Defendant Gets To Assert Never Before Raised Defenses**......................................................................**12**

**D. Defendant Stipulates To Limit Its Position In Its Second Motion for Summary Judgment**......................................................................**13**

**E. Second Cross Motions for Summary Judgment**...........................**16**

**F. Standard of Review** ........................................................................ **23**

***Summary of the Argument*** ........................................................................ ***1***

***Argument*** ........................................................................................... ***1***

**I. The Court Improperly Analyzed Bailment In Terms of Ownership and Not Possession** ........................................................................ **1**

**II. Alternatively, Global Network Management, LTD's Business Relationship Lends to Equitable Subrogation** ........................................ **6**

**III. The District Court Should Have Considered the Equitable Subrogation Argument** ........................................................................ **10**

**IV. The Court Allowed Defendant to Violate Its Own Stipulation** **13**

***EARLIER DECISIONS*** ........................................................................ ***16***

***SHOWING THE COURT'S CUMULATIVE ERROR*** ................................ ***16***

**I. Introduction** ........................................................................................ **16**

**II. Allowing Appellee To Raise Prudential Standing When It was Never Plead** ........................................................................................ **17**

**III. Denying a Motion to Comply with Rule 17(a)** ............................ **19**

**IV. Denial of Reconsideration On the Rule 17 Issue** ........................ **20**

*Conclusion* ........................................................................................................ 21

*CERTIFICATE OF COMPLIANCE* ............................................................ 22

*CERTIFICATE OF SERVICE* ..................................................................... 22

## TABLE OF AUTHORITIES

### *Cases*

*Affiliated FM Ins. Co. v. Dependable Warehousing & Distribution, Inc.*, 303 F. Supp. 3d 1329, 1331 (S.D. Fla. 2018)(emphasis added).........................1

*Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.,* 418 F. Supp. 3d 1075, 1083 (S.D. Fla. 2019) .........................................................................16

*Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1194 (11th Cir.2009) ......10

*Baron v. Osman*, 39 So.3d 449, 451 (Fla.Dist.Ct.App.2010) .......................18

*Brush v. Mia. Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1368 (S.D. Fla. 2017) .........................................................................18

*Bryant v. Dupree*, 252 F.3d 1161 (11th Cir.2001) .................................23, 24

*Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008) (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir.2002)..................................................21

*Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir.1999) ..........22

*Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir.2006) ....12

*Clermont Marine Sales, Inc. v. Harmon*, 347 So.2d 839, 841 (Fla. 2d DCA 1977).............................................................................................2

*Commerce P'ship v. Equity Contracting Co.*, 695 So.2d 383, 385 (Fla. 4th DCA 1997) .......................................................................................19

*Dressler v. Equifax, Inc*. 2020 U.S. App. LEXIS 8194 ................................22

*Empire Tool Co. v. Wells*, 227 So.2d 76 (Fla.Dist.Ct.App.1969)...................6

*Floyd v. Eastern Airlines, Inc*., 872 F.2d 1462, 1490 (11th Cir.1989) .........24

*Friedman v. N.Y. Life Ins. Co*., 985 So.2d 56, 58 (Fla. 4th DCA 2008).......19

*Future Tech. Today, Inc. v. OSF Healthcare Sys*., 218 F.3d 1247, 1247 (11th Cir. 2000).........................................................................................21

*H.L. McNorton v. Pan American Bank of Orlando*, 387 So.2d 393, 399 (Fla. 5th DCA 1980) .........................................................................................11

*Hazen v. Cobb–Vaughan Motor Co*., 96 Fla. 151, 117 So. 853 (1928)........11

*Hospital Corp. of Am. v. Fla. Med. Ctr., Inc.* ..............................................18

*In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, No. 08-MD-01916-KAM, 2016 WL 3247913, at *10 (S.D. Fla. June 1, 2016) ........................................................................................8

*In re Managed Care Litigation*, 185 F. Supp. 2d 1310, 1337 (S.D. Fla. 2002) ........................................................................................17

J*etport, Inc. v. Landmark Aviation Mia., LLC*, No 1:16-CV-23303-UU, 2016 WL 10933097, at *2 (S.D. Fla. Nov. 1, 2016) .......................................7, 8

*Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1306 (S.D. Fla. 2012), *aff'd*, 714 F.3d 1234 (11th Cir. 2013)..............9, 18

*Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293 (11th Cir. 2007)........................................................................................1

*Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir.2008)...............12

*Mobil Oil Corp. v. Dade County Esoil Management Co., Inc.*, 982 F.Supp. 873, 880 (S.D.Fla.1997) ........................................................................12

*Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139-40 (9th Cir.2004)....21

*Palm Beach Aviation, Inc. v. Kibildis,* 423 So.2d 1011 (Fla.Dist.Ct.App.1982) ........................................................................6

*Parker v. Miracle Strip Boat & Motors Headquarters, Inc.*, 341 So.2d 197, 198 (Fla. 1st DCA 1976) ....................................................................1

*Pirowskin v. Atl. & Pac. Ass'n Mgmt., Inc.*, No. 20-CV-21380, 2020 WL 2322920, at *3 (S.D. Fla. May 11, 2020) ..............................................16

*Puritan Ins. Co. v. Butler Aviation-Palm Beach, Inc.*, 715 F.2d 502, 504 (11th Cir. 1983) ........................................................................ passim

*Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012) ..............................18

*Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F.Supp.2d 1213, 1229 (S.D.Fla.2009)....................................................10

*ThunderWave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1564 (S.D. Fla. 1997)..................................................................................................11

***Statutes***

28 U.S.C. § 1291 ........................................................................... vii

28 U.S.C. § 1331 ........................................................................... vii

28 U.S.C. § 1441 ........................................................................... vii

***Treatises***

17 Am. Jur. 2d "Contracts" § 3 (1964) ........................................................18

## **Statement Pertaining to Appendix**

Appellant's Appendix for its initial brief on the merits is composed of only the most relevant portions of the record. Appellant's and Appellee's Motion for Summary Judgment, Responses to Motions for Summary Judgment, and respective statement of Fact are not included simply because the Lower Tribunal DID NOT base its ruling on the various motions for summary judgment. However, should the Court require a more complete record – Appellant shall supplement the record.

The record shall be cited to as: Appellant's Appendix, Pg. Ln.

## **Jurisdictional Statement**

The District Court had jurisdiction of the case that is docketed as No. 1:20-cv-20723JB pursuant to 28 U.S.C. § 1331 following its removal to federal court pursuant to 28 U.S.C. § 1441. The district court's had subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) in that there was complete diversity of the parties and an amount in controversy in excess of $75,000.

The Court of Appeals has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291.

The final judgment that is being appealed from disposed of all issues in this cause and was entered on September 10, 2025 by District Court Judge Jacqueline Becerra.

No motion for a new trial or alteration of the judgment or any other motion that would have tolled the time to appeal was filed. The Notice of appeal was filed on  October 25, 2021

## **Brief Statement of the Issues**

1. Whether the District Court erred in dismissing the Amended Complaint based on issues raised by Appellee during the initial round of cross motions for summary judgment, but not in Appellee's Answer to the Amended Complaint
2. Whether the District Court erred in Denying Appellant's Motion to Substitute Party , Join Party, or Leave as Is Party on the basis of judicial discretion, and instead opting to Dismiss the Amended Complaint
3. Whether the District Court erred in Denying Appellant's Expedited Motion for Clarification and Affirm the Prior Stipulation as it pertains to Summary Judgment
4. Whether the District Court erred in Granting Appellee's Motion for Summary Judgment on the basis of "ownership" of the property held in bailment, despite the issue being a disputed issue of material fact.

## Statement of the Case and Statement of Facts

### A. Pertinent Facts and Appellate Procedural History

The facts of this case are generally known to this Court, as this Court has previously "Affirmed in Part, Reversed in Part, and Remanded" the same case two years ago. See generally *Glob. Network Mgmt., Ltd.*, 67 F.4th 1312 (11th Cir. 2023)[1].

This case arises out of the alleged theft of approximately 1,380 memory cards from Plaintiff's servers which were stored in a data center operated by Defendant[2][3].

---

[1] Although the Lower Tribunal at one point stated that Appellant is "reading too much into" this Court's prior opinion, it later held that this Court's prior opinion made things "hard." The reason it is "hard" is because it is almost impossible to grant summary judgment on the merits if one looks into this Court's prior opinion (See Appellant Appendix Pg. Vol I 108; ln. 18-25).

[2] Just for the Court's recollection, Plaintiff in this case is a global company that manages servers for companies like Google and Telegram Messenger. It installs and maintains servers and their respective internal parts, and has constructive possession of those systems (this becomes important later in this brief).

[3] Defendant is a company that provides, in simplistic terms, a place to store the servers. Defendant provides security, connectivity, and electricity for the servers. In short, Defendant is a data center. Defendant's ownership has changed hands several times. It was first known as Level 3 Latin American Solutions, LLC. Then it was known as CenturyLink Latin American Solutions. Then it was bought by Lumen Technologies, Inc. Finally, today it

As noted in footnote 2 of this brief, Defendant provides housing in its data center for equipment and other IT related services. On September 2017 and February 2018, Plaintiff ordered two deliveries of 224 servers to be shipped to Defendant's data center in Miami, Florida ("Data Center"). Each delivery contained approximately 224 servers, and each server contained eight 128Mb memory cards. On April 28, 2018, Plaintiff's CEO, Valdimir Vedeneev, discovered that memory cards were missing from the servers maintained in the Data Center.

Before that, from 2014 through 2018, the parties and some of their predecessors and related entities signed a series of contracts for data storage and processing services: (1) in 2014, Telegram Messenger LLP and Level 3 Communications GmbH (later acquired by Centurylink) signed a master service agreement; (2) in 2015, Telegram Messenger LLP and Level 3 signed a U.S. addendum  agreement to add provisions specific to services rendered in the United States; (3) in 2017, Telegram Messenger LLP and Level 3 signed a letter agreement which canceled the 2014 master service agreement and executed a new one; and (4) in February of 2018, the parties signed: (a) a novation agreement substituting Global Network for Telegram

---

is known as Cirion Technologies Solutions, LLC. None of this change of ownership effects jurisdiction.

Messenger LLP in the 2017 master service agreement, and (b) a novation agreement substituting Global Network for Telegram Messenger LLP in the 2015 addendum[4].

Relevant to this particular action is that the argument that Defendant made, and that the District Court accepted at the motion to dismiss stage that prompted the first appeal was that (1) Global Network's corporate representative was able to enter the Data Center as he wished, (2) HE DID ENTER THE DATA CENTER as he wished, and (3) thus there was no exclusive control. The District Court and Defendant relied on deposition testimony that was taken before the Motion to Dismiss was filed and heard. Said testimony was below:

> Q. Did you ever enter the data center during a weekend?
> A. Well, let me tell you, just in case, that, yes. Because for me, there is no weekends; there is no weekdays. I mean, of course I know what weekends are, but for us people who work for telecom, there are no weekends. Then I would say yes.
> Q. No, I understand. Your business requires you to be able to work seven days a week, 24 hours a day. Is that fair?
> A. Yes, of course.
> Q. All right. And that's part of the reason you needed to be able to have the right to access this data center, or any data center, anytime day or night, right?
> A. Yes, of Course[5]

---

[4] All of these agreements can be found in the Appendix from Page 161 to 206 of the Appendix.

[5] This is not part of the Appendix for this appeal, but was part of the record of the prior appeal.

As can be seen, Global Network, based on the novation agreement, as well as its agreement with Telegram Messenger, was transferred possession of the servers and chips for the purposes of storing them, with Defendant simply providing data center services.

The above is important because the District Court found that Global Network had no ownership of the memory chips, disregarding the Undisputed Material Facts that there were several novation agreements, and Global Network had possession of the memory chips.

Regardless, going back to the prior appeal that Global Network prevailed on for the purposes of Bailment: On September 30, 2021, the District Court dismissed the case with prejudice. Ultimately, this Court reversed and remanded the District Court, finding that the Plaintiff plausibly pled its bailment claim, rejecting the District Court's analysis of the Plaintiff's complaint having on bare-bone allegations, that Plaintiff failed to demonstrate that Defendant had exclusive possession and control, and a series of other factors[6].

---

[6] Global Network is very concerned with the tone and tenor that the District Court has used in this case. At the motion to dismiss stage, the District Court noted that Global Network's counsel made bare bones allegations that do not support a plausible theory of recovery. This was, of course, found not to be

As such, the case was returned to the District Court June 16, 2023.

On July 21, 2023, Defendant filed its Answer and Affirmative Defense with eleven Affirmative Defenses (Appellant's Appendix Page 30-33):

1. First Affirmative Defense – Comparative Negligence
2. Second Affirmative Defense – Statutory Comparative Negligence
3. Third Affirmative Defense – Contributory Negligence
4. Fourth Affirmative Defense - Assumption of Risk
5. Fifth Affirmative Defense – Intervening Cause
6. Sixth Affirmative Defense – Due Care
7. Seventh Affirmative Defense – Failure to Mitigate
8. Eighth Affirmative Defense – Lack of Standing Due to Plaintiff not owning the property in question
9. Ninth Affirmative Defense – Contractual Integration Clause
10. Tenth Affirmative Defense – Contractual Limitation of Liability
11. Eleventh Affirmative Defense – Independent Tort Doctrine

As can be seen, none of these affirmative defenses have anything to do with whether Global Network Management, LTD had prudential, as opposed to Article III standing. This is important for later, and Appellant would like the Court to, at this point in the argument, simply acknowledge these affirmative defenses.

---

true. the Summary Judgment stage, the District Court noted "Plaintiff has pursued, for years now, an implied bailment claim which had no basis in fact or law given the unequivocal sworn testimony of Plaintiff's principal that Plaintiff did not own the missing memory cards." This is not true as well, and a clear misunderstanding of the law of bailment.

## B. Defendant Filed Their First Motion for Summary Judgment

Not long after, Plaintiff and Defendant filed their respective Motions for Summary Judgment going through every aspect of the case, with oral argument being set on Tuesday, March 12, 2024 at 1:00 p.m.

Interestingly enough, Global Network Management gave its full argument and answered the District Court's question pertaining to the issue of gross negligence and the issue of the "vanishing presumption (See generally Appellant's Appendix, Pg. 46-54).

Shortly after providing an answer to substantive questions that the Appellant had to prove for the purposes of trial – the District Court changed gears:

> THE COURT: Let's continue. Let me hear just one more argument from you, and it's this issue of whether or not your client is still a party So it seems to me that it's undisputed that the plaintiff in this case no longer exists. Is that correct?
> MR. RAIKHELSON: The plaintiff in this case has merged with another -- another entity. But I don't think that that even should be worth mentioning here because that was never raised in their motion
> THE COURT: No, no. I'm asking you a question.
> MR. RAIKHELSON: Okay.
> THE COURT: Does the plaintiff exist or not, sir?
> MR. RAIKHELSON: The plaintiff, I believe -- I don't know what that means, "exist," and I'll tell you why I'm having trouble. I want to be forthcoming with the Court. I'm not trying to dodge your question. Why I'm having trouble answering that question is because the plaintiff merged into an Antigua company. So GNM, LTD, exists in another form because it merged into GNM, Inc., I believe, which is an Antigua company.

(Appellant’s Appendix Vol I, Pg. 54; ln. 8-25; pg. 55; ln .1-2).

When Appellant noted to the District Court that this is litigation by surprise, the District Court took a, frankly, shocking stance:

> MR. RAIKHELSON: Well, I can't make a factual record regarding that because it was never raised in the responsive pleading. It's not grounds for –
> THE COURT: Sir, it can't be raised in a responsive pleading because it didn't happen until 2023, right, so it couldn't have been raised.
> MR. RAIKHELSON: But this happened in 2024. They could have brought this up when they asked leave to amend the complaint, and that's what the case law clearly says.
> THE COURT: They're not supposed to be amending the complaint, sir.
> MR. RAIKHELSON: Amending the answer I mean. They could have amended the answer in that time, say "Look, we have information about this. We want to assert this is an affirmative defense." They haven't asserted this as an affirmative defense. They can't bring it up as – (Appellant’s Appendix pg. 57; ln. 25; Pg 58; ln 1-15).
>
> * * *
>
> THE COURT: No, I don't think it's going to be done in summary judgment; but I think you've got to do it. The issue is somebody's got to do it.
> MR. RAIKHELSON: That's, I guess, a little bit different question. And if the Court wants us to, as they did, they supplemented LATAM with Cirion or someone else, I can do that same mechanism because, like they did, this situation clearly would not divest diversity because essentially it would still be a foreign entity; one foreign entity swapping places with another foreign entity based on the basis of merger. So it seems like it's much ado about mostly nothing. And if it can be remedied from a procedural standpoint
> It was never pled in an affirmative defense. . . . They never asked for an amendment to those affirmative defenses when they discovered that in 2023. We're in March of 2024. There was ample time to do so. There is apparently good cause. I'm sure the Court will find good cause; although I try not to read tea leaves. But regardless of that,

> there is a time and place for when things should happen, and it was never done. And now on their motion for summary judgment it was sprung up on plaintiff, and now plaintiff has to answer before the Court something that was just sprung up in a motion for summary judgment; after discovery has closed and -- after discovery has closed and after joint statements of fact, conclusions of law, and proposed jury instructions were submitted -- either created or submitted to the Court. I can pull up the record, but I don't know if -- created and passed around between the parties. So, Your Honor, it's way too late for that, and this is the definition of litigation by surprise.
> THE COURT: It's not, sir. It's not.
> THE COURT: The issue of subject matter jurisdiction can be raised at any time, and it can even be raised sue sponte by the Court. That's not litigation by surprise.
> (Appellant's Appendix Pg. 59; ln. 10-25; Pg. 60; ln. 1-24).

Interestingly enough, although the District Court says that Subject Matter Jurisdiction can be raised AT ANY TIME, Mr. Dimond for Cirion Technologies Solutions, LLC states:

> To be clear, we have not argued that Your Honor lost jurisdiction over the case under a diversity analysis by virtue of that (Appellant's Appendix Pg. 65; ln. 1).

As can be clearly seen, Cirion Technologies Solutions never argued an issue of jurisdiction, their whole "surprise" argument was one of misjoinder.

Ultimately, it seems that even after the District Court's initial stance, it originally got the issue right:

> THE COURT: Can't they just substitute that party? Can't they?

MR. DIMOND: You cannot. You cannot just substitute for two reasons. One, right now there is no party, right. The GNM Inc., whatever that is, isn't here[7] (Appellant's Appendix Vol I. Pg. 66; ln. 1-5).

* * *

THE COURT: I will say I think the bailment argument on summary judgment is hard, Mr. Dimond, given what the Eleventh Circuit did to this case. You called it "nuanced." I call it hard. It was a tough one. I think the issue is really going to be whether or not -- what the standard is because if the standard is gross negligence, then obviously what you would have to proffer at this point to get to a jury is much different. It's simple, maybe at that point it is a jury question. I'm not there yet because the threshold issue is can you be here. So I'm going to have to decide that one first. And then if you can be here, I will decide whether or not it goes to a jury or whether or not it is subject to summary judgment.
(Appellant's Appendix Pg. Vol I 108; ln. 18-25; Pg. 109; ln. 1-4).

Whether I can grant it in favor of the defendant, like I said, I'm going to get through the first issue before I give their issues more consideration because I think it really is going to come down to what kind of bailment it is; and then is there sufficient evidence on the record to let it go to the jury on the negligence issue. I think that's really where the case is. I know there's a lot of arguments, but that's really what it is. I can't get there until I know that I have a party.

(Appellant's Appendix Pg. Vol I 109; ln. 11-21)

* * *

THE COURT: They're moving for summary judgment because either simple or gross, they're saying there is not sufficient in the record to let it go to a jury. Clearly if it's gross negligence, right, then what I would need to see in order to let it go to a jury would have to be different than if it were simple. It is not a distinction without a difference. I don't really need to hear any more argument. This is

[7] Here, Mr. Dimond intentionally mislead the Lower Tribunal. Substitution is required under Fed. R. Civ. P. 17(a)(3).

> what I'm going to do. You have ten days, sir, to file a motion
> with this Court to substitute the party. I don't know how you're
> going to do it, what you're going to argue, what rule you're going
> to base it on. I don't practice law any more. That's on you.
> You have ten days to address that issue.
> (Appellant's Appendix Vol I Pg. 104; ln. 22-25; Pg. 105; ln. 1-9).

As can be seen, the issue that the District Court was concerned about was what standard to apply, and whether it was a jury who would need to resolve the standard because it was based on whether the bailment was "gratuitous" or for the "benefit of the parties."

However, the District Court entertained an argument that was never raised before in the pleadings, and not based on Subject Matter Jurisdiction.

Ultimately, following the District Court's instruction, Appellant filed a Motion to Deem Defendant's Standing Argument waived, or alternatively to substitute Global Network management, LTD with Global Network Management INC., which the Court struck because it was "argumentative" (Appellant's Appendix, Pg. 124).

In its stead, Plaintiff filed a non-argumentative MOTION to Substitute Party, Join Party, or Leave as Is Party on the basis of judicial discretion (Appellant's Appendix Pg. 131). This remedy is what is required under Fed. R. Civ. P. 17(a)(3), and something the Lower Tribunal directed Plaintiff to do.

Ultimately, the District Court did something it had no right doing, dismissing the Amended Complaint simply for, what essentially, is misjoinder Under Fed. R. Civ. P. 17(a)(3) (Appellant's Appendix Pg. 136).

### C. Post Summary Judgment – Defendant Gets To Assert Never Before Raised Defenses

To that, Plaintiff filed a Second Amended Complaint, which was dismissed because "There are no factual allegations that demonstrate how Global Inc. has a legally cognizable interest in the claim or property at issue, or how it is a purported successor to Global Ltd."

In that, Plaintiff submitted a THIRD AMENDED COMPLAINT that was not subject to a Motion to Dismiss. Plaintiff contended that although Global Network Management, LTD is no more, it had a *de facto* merger with Global Network Management INC. Essentially, the owner was the same, customers were the same, bank accounts were the same, and everything was the same. Although there were no formal documents of a merger, it is clear that Global Network Management, INC picked up from where Global Network Management, LTD left off.

Ultimately, Defendant filed an Answer and Affirmative Defenses, this time adding the following affirmative defense:

> "Plaintiff, Global Network Management, Inc., is not a proper party. It does not own the claims it asserts in this case, having never received the claim by assignment (timely or otherwise) and not being a proper successor in interest to Global Network Management, Ltd. Global Network Management, Ltd. would equally be an improper plaintiff, having ceased to exist years before the filing of the Third Amended Complaint."

Ultimately, the District Court gave Defendant the ability to raise an argument it had never raised before, and allowed them to conduct extensive – additional discovery.

## D. Defendant Stipulates To Limit Its Position In Its Second Motion for Summary Judgment

At this point, the interesting stuff happens. AFTER the Third Amended Complaint and Answer filed, on November 12, 2024, the parties signed a joint scheduling report.

On that Joint Scheduling Report appears the following language:

> 9. A list of all pending motions, whether each motion is "ripe" for review, the date each motion became ripe, and a summary of the parties' respective positions with respect to each ripe motion:
>
> That said, Defendant expects that it may file a second motion for summary judgment upon completion of outstanding discovery related to whether Plaintiff is the proper corporate successor to Global Network Management, Ltd (Appellant's Appendix Vol I  pg. 223).

This joint scheduling report was signed by lead counsel for the Defendant, who argued every motion before the District Court, and also argued the first appeal in this case.

Ultimately, as can be seen, Defendant stipulated that it may file a second motion for summary judgment related to the issue of who the proper party is (standing). If the Court looks at the question presented, the question simply asks for all pending motions, and not what the parties intend to file. As such, this was a gratuitous stipulation. Nobody forced the Defendant to make such a stipulation, but it did anyways. The reason the parties made such a stipulation is based on the rhetoric of the District Court during the first motion for summary judgment, where the only issue it was concerned about was what standard of negligence the jury was to hear.

Ultimately, what occurred next is truly astounding. Appellee endeavored to get into deep discovery, seeking financial information, taking three depositions of Appellant, and procuring terabytes of data. In doing so, Appellee managed to convince the District Court that Appellant, after producing terabytes of data and sitting for three additional (full day) depositions (five full day depositions in total), failed to produce everything necessary to prove that Global Network Management, Inc. was not a de facto merger of Global Network Management, LTD.

Crazy Part: From March 12, 2024, at 1:00 PM until June/July of 2025 Defendant has taken valuable Court time to prove ONE thing, and one thing only: There was no de facto merger between the two Global Network Management companies, and neither company can maintain its case against Cirion Technologies, LLC.

That is a roughly a year and a half of litigation on an issue that was never even plead in Cirion Technologies, LLC's original Answer and Affirmative Defense, and something the District Court, in *gratiam*, allowed Appellee to pursue.

Ultimately, the reason for this extensive discovery, party, was based on the stipulation that this was **THE ISSUE** that Defendant was focusing on.

Interestingly, the District Court, in its Order Granting Appellee's Motion for Summary Judgment states:

> As Plaintiff is well aware, discovery in this case closed in November, 2023, following which the parties filed their initial cross-Motions for Summary Judgment. ECF Nos. [47], [61], [67]. During oral argument on those motions, Plaintiff's counsel advised the Court—for the first time—that the then-current plaintiff, Global Network Management, Ltd., no longer existed and/or had otherwise been dissolved

However, that is not true because it was the Defendant who originally raised the issue in its first motion for summary judgment, not Plaintiff.

Plaintiff has always argued that these arguments by the Defendant were waived.

Likewise, the District Court found:

> The foregoing discussion makes clear that the Court did not previously "reopen discovery," but rather, provided a deadline to conduct discovery in connection with a new pleading (i.e., the Third Amended Complaint) that raised a new issue (Global Network Inc.'s standing as a successor entity).

This is a mischaracterization by the District Court. The District Court allowed discovery in connection with a new pleading based on a new issue, but that new issue was injected by the Appellee for the first time on Summary Judgment, and the District Court allowed for it to occur. The District Court also improperly, and illegally, dismissed the Second Amended Complaint in violation of Fed. R. Civ. P.17(a)(3).

### E. Second Cross Motions for Summary Judgment

This takes us to the cross Motions for Summary Judgment. Plaintiff asked the District Court to affirm the prior stipulation of the parties, that the only issue that can be heard on summary judgment is whether "whether Plaintiff is the proper corporate successor to Global Network Management, Ltd." To this, the District Court ruled:

> PAPERLESS ORDER: The Court has not limited the scope of summary judgment nor ratified any purported stipulation between the parties regarding summary judgment. Accordingly, upon due

> consideration of the Expedited Motion, the pertinent portions of the record, and the relevant authorities, it is ORDERED AND ADJUDGED that Plaintiff's Expedited Motion, ECF No. 180 , is DENIED. Signed by Judge Jacqueline Becerra on 6/18/2025. (nsy) (Entered: 06/18/2025)

However, the issue is not whether the District Court limited the scope, because it was the parties, jointly, who limited the scope.

Ultimately, both parties filed Motions for Summary Judgment and Statements of Material Fact.

On August 22, 2025, the Court issued the following PAPERLESS ORDER:

> PAPERLESS ORDER. THIS CAUSE is before the Court on the parties' Cross-Motions for Summary Judgment. ECF Nos. 184 , 187 . Pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, the Court ORDERS the parties to each file a supplemental memorandum of law not to exceed ten (10) pages in length by August 29, 2025 that addresses the following issue: Whether Defendant is entitled to judgment as a matter of law on Plaintiff's claim for implied bailment in light of the undisputed fact that the memory cards and servers at issue were not owned by Plaintiff. See Deposition of Vladimir Vedeneev dated June 21, 2019, ECF No. [186-3] at 32:22-33:9, 34:1-19, 174:24-175:1-18; *Sirpal v. University of Miami*, 684 F. Supp. 2d 1349, 1364 (S.D. Fla. 2010); *Potts v. Budget Rent a Car System, Inc.*, No. 4:04-cv-074-SPM, 2005 WL 3057175, at * 7-8 (N.D. Fla. Nov. 14, 2005); *Emerson v. Lambert*, 374 So. 3d 756, 758, n.1 (Fla. 2023); *Fagan v. Central Bank of Cyprus*, No. 19-cv-80239, 2021 WL 2845034, at * 15-16 (S.D. Fla. June 28, 2021). Signed by Judge Jacqueline Becerra on 8/22/2025. (nsy) (Entered: 08/22/2025)

The Court issued this Order despite Defendant's OWN Undisputed Material Fact saying the following[8]:

> The 2014 MSA controlled the relationship between Telegram Messenger, LLP and companies affiliated with an entity known as Level 3's companies globally. See Third Amended Complaint for Damages, ECF No. 119, at ¶11.
>
> On March 6, 2015, Telegram Messenger LLP and Level 3 Latin American Solutions, LLC ("LATAM") entered a US Addendum Agreement (the "US Addendum"), which referred to the MSA and provided for the services in the United States. See Third Amended Complaint for Damages, ECF No. 119, at ¶12
>
> Between June 21 and 22, 2017, Telegram Messenger LLP and Level 3 Germany signed a letter of agreement (the "LOA") substituting Telegram Corp. with Telegram Messenger LLP, cancelling the MSA 2014, and entering a new master service agreement (the "2017 MSA"). See Third Amended Complaint for Damages, ECF No. 119, at ¶13.
>
> On February 12, 2018, Level 3 Germany, Telegram Corp, and GNM signed a novation agreement (the "First Novation Agreement"). See Third Amended Complaint for Damages, ECF No. 119, at ¶14.
>
> Under the terms of the First Novation Agreement, GNM succeeded Telegram Corp. and all rights and duties were assigned to GNM, which accepted the assignment of rights and duties. See Third Amended Complaint for Damages, ECF No. 119, at ¶14; see also Deposition of John Connolly, attached as EXHIBIT 1, at 52:7-15
>
> On February 14, 2018, LATAM, GNM, and Telegram Corp. entered into yet another novation agreement (the "Second Novation Agreement") pursuant to which GNM substituted for Telegram Corp.

---

[8] Interestingly enough, the District Court found that Plaintiff's response to Defendant's statement of material fact was lacking. It could be argued that Plaintiff consents, at least in part, to Defendant's Statement of Material Fact. Clearly, looking at both statements of material fact, there is no dispute to the assertions as to the relationship between Telegram and GNM.

under the US Addendum and other orders signed by LATAM and Telegram Corp. See Third Amended Complaint for Damages, ECF No. 119, at ¶15

**NOTE: the above undisputed facts are the same facts THIS COURT found during the first appeal, and forms the basis of this Court's earlier appellate opinion (Appellant's Appendix Vol II, Pg. 260).**

As such, the District Court is indicating, "How can you claim a bailment claim when the Memory Chips are not owned by you?" when the documents forming the basis of the relationship of the parties, as well as the Defendant's Statement of Undisputed Fact show that "GNM succeeded Telegram Corp. and all rights and duties were assigned to GNM, which accepted the assignment of rights and duties.

Ultimately, all of the rights and duties of Telegram Messenger were transferred to Global Network Management, LTD, and Defendant was a party and witness to those agreements.

Notwithstanding the above, this leads to fundamental conclusions Globel Network Management LTD had a close business relationship with Telegram Messenger, and what was once owned by Telegram Messenger is now owned by Globel Network Management.

Alternatively, we should look to the testimony where Plaintiff clearly says that the Memory chips belong to a client of GNM, Telegram, and he had to replace them out of his own expense, creating equitable subrogation.

> Q. Okay. And does GNM own any of the memory located inside any of the servers located on the sixth floor of the building contained in the Miami data center?
> A. I don't know how to answer that question. I will try to decipher it. After the employees of the Level 3 so to speak -- well, it's probably not correct to accuse anyone here, but after the incident of the disappearance of memory cards -- so Telegram Messenger, our client, lost their memory cards, and GNM, in order to cover for that, bought at their own expense, at their own expense the memory cards and installed them (Appellant's Appendix Vol . II Pg. 277; ln. 10-25).

Ultimately, Plaintiff made the argument in conjunction with an equitable subrogation argument. Inclusive of the equitable subrogation argument, Plaintiff asked the District Court to give it the same courtesy that it gave Defendant when Defendant made a claim that was not previously included in its Answer and Affirmative Defense, allow discovery to be re-opened on the basis of that issue if the response is unclear.

To that, the District Court denied the request, while at the same time appearing frustrated with the speed at which Plaintiff responded to her request:

> The Court gave the parties one week to file their respective supplemental memorandum. *Id*. However, just a few hours after the Court entered its Order, Plaintiff filed its supplemental memorandum of law that was devoid of any thoughtful analysis (Appellant's Appendix Vol II Pg. 251).

It should be noted that Plaintiff's response was seven pages long, cited to relevant case law, and provided for several paths to resolve the issue that the District Court had.

Whether the District Court agreed with Plaintiff's position is one thing, but saying that it was "**devoid of any thoughtful analysis**" is a stretch[9].

Regardless, the District Court, in a veiled attempt to discredit Plaintiff's position wrote:

> Plaintiff relies upon this excerpt to argue that "it is clear that Plaintiff made the payment to protect his own business interest with Telegram, did not do it voluntarily, clearly was not primarily liable for the debt, paid for the entire value of the chips by buying new chips, and there would be no injustice to the third party- i.e. Telegram Messenger, for Plaintiff to be compensated for the amount he spent on the chips to replace them." Id. at 5. It is far from clear how the cited testimony supports the legal proposition that Plaintiff puts forth, and Plaintiff provides no explanation to make the connection evident. Likely in recognition of the fact that Plaintiff's position lacks factual and legal support, Plaintiff's counsel suggests that the Court should simply ignore the confines of the law and the evidentiary record in order to "do justice." Id. at 5. (Appellant's Appendix Vol I, Pg. 246).

However, there is nothing to discredit because the term "do justice" is not something that Plaintiff coined. This is a term the Supreme Court of Florida stated:

[9] Again, Plaintiff finds the tone and tenor of the District Court's Orders unacceptable in modern jurisprudence. Judges should perform their duties with fairness, impartiality, diligence, and respect. Canon 3A(3) requires judges to be patient, dignified, respectful, and courteous to all individuals involved in their official capacity. Making disparaging remarks violates this standard.

> Ultimately, equitable subrogation" is subrogation that arises by operation of law or by implication in equity to **prevent fraud or injustice**. Similar to other equitable remedies, equitable subrogation is "founded on the proposition of **doing justice without regard to form**." *Underwriters at Lloyds v. City of Lauderdale Lakes*, 382 So. 2d 702, 704 (Fla. 1980).

As such, when the District Court found that Plaintiff "boldly" requested that the Court find equitable subrogation in furtherance of "doing justice," this is not Plaintiff "boldly" taking the position, but the Supreme Court of Florida taking the position, with the recently deceased Justice McDonald writing the opinion of a judicial opinion.

Regardless, the District Court found that because "equitable subrogation" is not found on Plaintiff's Third Amended Complaint, Plaintiff should be barred from making such a defense to Defendant's Motion for Summary Judgment because Defendant did not get "fair notice" of the defense (Appellant's Appendix Vol II, Pg. 254).

It should be noted, and this will be fleshed out later in this brief, that although Article III Standing or lack of joinder must be plead as an affirmative defense, Equitable Subrogation does not need to be. See *Memorandum Transp. Int'l Pool, Inc. v. Lyons*, 609 So. 2d 658, 663 (Fla. 4th DCA 1992);See also *Kala Invest., Inc. v. Sklar*, 538 So. 2d 909 (Fla. 3d DCA 1989)

Moreover, the District Court should have allowed Plaintiff leave to amend to open discovery to include evidence of equitable subrogation. See *Hart Properties, Inc. v. Slack*, 159 So.2d 236 (Fla. 1964) (where record indicates existence of valid cause of action or defense not pleaded, entry of summary judgment must be with leave to amend); *Purinson v. Antenna Specialists Co.*, 408 So.2d 617 (Fla. 3d DCA 1981) (same). See also *West American Insurance Co. v. Yellow Cab Co*., 495 So.2d 204 (Fla. 5th DCA 1986)

This appeal followed.

**F. Standard of Review**

This Tribunal review grants of summary judgment de novo, applying the same legal standard the district court used. *Browning v. Peyton*, 918 F.2d 1516, 1520 (11th Cir.1990).

Pertaining to the issue of Article III or prudential "standing," and whether jurisdiction exists is reviewed de novo. *Payroll Mgmt. v. Lexington Ins. Co.*, 566 F. App'x 796, 798 (11th Cir. 2014).

This Tribunal must review for an abuse of discretion the denial of a motion to reconsider, *Region 8 Forest Service Timber Purchasers Council v. Alcock*, 993 F.2d 800, 805-06 (11th Cir. 1993), as well as review any

attendant question of law de novo, see *Coventry First, LLC v. McCarty*, 605 F.3d 865, 869 (11th Cir. 2010).

In the event that Defendant claims that certain arguments are raised for the first time in this Appeal, the district court's rulings on law are subject to *de novo* review *In re Reed*, 161 F.3d 1311, 1313 (11th Cir. 1998)

## **Summary of the Argument**

This appeal has several arguments, as follows:

1. Based on the facts of the case, the District Court erred in granting summary judgment when it misunderstood what a Bailment is: ownership versus possession, and ignored (while at the same time acknowledging) Defendants undisputed Statement of Material Fact which incorporates the various novation agreements and testimony of Global Network Management.
2. Likewise, The District Court Erred in not allowing argument on equitable subrogation argument, and finding that such an argument does not lend itself to an issue of material fact requiring a jury.
3. The District Court erred in allowing Summary Judgement argument to go beyond the joint stipulation, and ordering that the stipulation has no effect
4. The District Court erred in allowing Defendant to make arguments in its FIRST Summary Judgment motion which were never raised in the pleadings

5. The District Court erred in dismissing Plaintiff's Amended Complaint on the basis of Fed. R. Civ. P. 17(a)(3), denying a Motion to Substitute or join the additional party, and subsequently denying a motion for reconsideration.

.

## Argument

### I. The Court Improperly Analyzed Bailment In Terms of Ownership and Not Possession

The District Court seems to believe that because Plaintiff does not have legal title [ownership] to the chips, it cannot pursue a claim for bailment. This is extremely faulty legal thinking because a bailment is not created out of ownership, but possession. One who has lawful possession of property, though not the owner, may maintain an action against a bailee for loss or damage See generally *Armored Car Serv., Inc. v. First Nat'l Bank of Miami*, 114 So. 2d 431, 434 (Fla. 3d DCA 1959).

Essentially, a bailment is created when one party, who has lawful possession of property (bailor), transfers that lawful possession in property to a third party (bailee) for a specific purpose.

This is why the Supreme Court of Florida has held:

> "Be all these matters as they may, the great weight of authority seems to be to the effect that a bailee has such special property in the goods that he may maintain an action for damage thereto, and that any one having a special interest in the goods may maintain the action. **Thus a factor, a broker, a warehouseman, a carrier, or any person employed to perform a service in respect to the goods of another with which he is entrusted for that purpose, may maintain an action for the recovery of them, or for any damage done them while he has charge**." *Atl. C. L. R. Co. v. Partridge*, 58 Fla. 153, 159, 50 So. 634, 636 (1909)(emphasis added).

Assuming that GNM does not “own” the memory chips, he is still in lawful possession of the chips based on the various Novation Agreements that all parties agreed to at multiple times in this litigation, including at the point of Defendant’s Statement of Undisputed Material Fact.

Moreover,

> “One having no property or interest in the goods cannot sue a carrier for breach of duty. But in order to maintain an action against a carrier, either ex contractu or ex delicto, a plaintiff does not have to be the absolute owner. If a plaintiff has a special interest therein and his legal rights are invaded, that would entitle him to maintain the action. A consignee may maintain an action against the carrier for a breach of duty imposed by law. *Fla. E. C. R. Co. v. Peters*, 72 Fla. 311, 317, 73 So. 151, 154 (1916)(although this case is about purchases and sale of goods, the quote implicates all legal duties, and not specifically ones based on a common carrier).

> Q. What do the servers in the data center do, which is to say how does GNM use those servers in its business?
> A. GNM is involved in the installation of client equipment -- in this case it's Telegram Messenger -- and further technical support of this equipment.
> Q. So GNM installs Telegram Messenger's equipment and then maintains it?
> A. Absolutely correct.

As can be seen, GNM always had lawful possession of the chips, even though it does not own them.

The District Court, unfortunately, relied on *Potts v. Budget Rent a Car Sys*., Inc., No. 4:04-cv-144-SPM, 2005 WL 3057175, at *7–8 (N.D. Fla. Nov. 15, 2005). However, as Appellant made clear in its Supplemental Brief to the District Court, such a case is distinguishable.

*Potts* is distinguishable. In *Potts*, the plaintiff had neither title nor possession of the van, and the court rejected a bailment claim because he was a legal stranger to the bailment.

Florida courts have long recognized that bailment does not require title ownership so long as the party had lawful possession or the right of possession. See *Armored Car Serv., Inc. v. First Nat'l Bank of Miami*, 114 So. 2d 431, 434 (Fla. 3d DCA 1959). Thus, *Potts* does not bar a bailment claim by a party who has stepped into the bailor's shoes through a novation or who otherwise has a recognized possessory right.

The same is true for the other cases that Defendant pointed to in its Supplemental Brief. For example, in *Chubb Seguros Chile S.A. v. Freight Logistics Int'l LLC*, 588 F. Supp. 3d 1312 (S.D. Fla. 2022), Defendants claim that the case stands for the proposition that a bailment claim requires ownership of, or legal title to, the property. That reliance is misplaced. In *Chubb Seguros*, the plaintiff was an insurer attempting to assert bailment rights on goods it neither owned nor possessed. The court held that a

plaintiff who is a legal stranger to the property cannot maintain a bailment claim. *Id.* at 1320.

Here, the facts are materially different. Global Network is not a stranger to the property or the bailment relationship. Through a **novation of the service contract** with Telegram Messenger, Global Network assumed Telegram's rights and obligations regarding maintenance and installation of the servers and associated components.

By operation of that novation, Global Network acquired the **legal authority to exercise control, take delivery, and demand return** of the property from the data center.

In fact, this is exactly what Plaintiff did at multiple times. Plaintiff was able to access the premises whenever he wanted. Not only is this Plaintiff's testimony, but Defendant's whole argument that it did not maintain "exclusive possession and control" relied on Plaintiff's actual possession of the servers and memory chips.

> Q. Did you ever enter the data center during a weekend?
> A. Well, let me tell you, just in case, that, yes. Because for me, there is no weekends; there is no weekdays. I mean, of course I know what weekends are, but for us people who work for telecom, there are no weekends. Then I would say yes.

> Q. No, I understand. Your business requires you to be able to work seven days a week, 24 hours a day. Is that fair?
> A. Yes, of course.
> Q. All right. And that's part of the reason you needed to be able to have the right to access this data center, or any data center, anytime day or night, right?
> A. Yes, of Course[10]

Florida law makes clear that a bailor need not hold legal title to the property so long as it has **lawful possession or the right of possession**. See generally *Armored Car Serv., Inc. v. First Nat'l Bank of Miami*, 114 So. 2d 431, 434 (Fla. 3d DCA 1959); *Meeks v. Fla. Power & Light Co.*, 816 So. 2d 1125, 1129 (Fla. 5th DCA 2002) (bailment defined by delivery, exclusive possession, and obligation to return).

Accordingly, *Chubb Seguros* is distinguishable: unlike the insurer in that case, Global Network possesses the contractual and legal authority to act as bailor, satisfying the requirements of a bailment claim. The principle articulated in *Chubb Seguros* — that strangers without possession cannot sue — does not apply here.

Here, Telegram Messenger originally delivered the servers and chips to the data center, creating a bailment. These chips were installed and

[10] Although not part of the Appendix on this case, it is part and parcel of the Appellee's Statement of Undisputed Material Fact (See Generally Appellant's Appendix Vol II, Pg. 266).

serviced by Global Network. Through a novation agreement, Telegram transferred its service contract with the data center to Global Network.

By virtue of that novation, Global Network assumed Telegram's contractual rights and obligations, including those arising from the bailment. Thus, Global Network acquired the right to enforce the data center's duty of safekeeping and may maintain an action for breach of bailment notwithstanding that it did not personally deliver the property or hold legal title. See *Meeks v. Fla. Power & Light Co.*, 816 So. 2d 1125, 1129 (Fla. 5th DCA 2002) (bailment arises from delivery, exclusive possession, and obligation of return).

## II. Alternatively, Global Network Management, LTD's Business Relationship Lends to Equitable Subrogation

Florida recognizes two types of subrogation: conventional subrogation and equitable or legal subrogation. Conventional subrogation arises or flows from a contract between the parties establishing an agreement that the party paying the debt will have the rights and remedies of the original creditor. See *Boley v. Daniel*, 72 Fla. 121, 123, 72 So. 644, 645 (1916). Here, there is no contract between Telegram and Global Network Management, INC or Global Network Management, LTD, so there cannot be conventional subrogation.

The doctrine of equitable subrogation is not created by a contract, but by the legal consequences of the acts and relationships of the parties. See *Dantzler Lumber & Export Co. v. Columbia Cas. Co.*, 115 Fla. 541, 551, 156 So. 116, 120 (1934).

As such, equitable subrogation occurs **AUTOMATICALLY**, and is applicable when (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party. See *Fowler v. Lee*, 106 Fla. 712, 714-15, 143 So. 613, 614 (1932); *Eastern Nat'l Bank v. Glendale Fed. Sav. & Loan Ass'n*, 508 So. 2d 1323, 1324-25 (Fla. 3d DCA 1987).

Moreover, under equitable subrogation, "the person discharging the debt stands in the shoes of the person whose claim has been discharged, thereby succeeding to the rights and priorities of the original creditor." *Eastern Nat'l Bank v. Glendale Fed. Sav. & Loan Ass'n*, 508 So. 2d 1323, 1324 (Fla. 3d DCA 1987); see also *Clearly Bros. Constr. Co. v. Upper Keys Marine Constr., Inc.*, 526 So. 2d 116, 116-17 (Fla. 2d DCA 1988) ("In subrogation, the subrogee, now in the same posture as the plaintiff/subrogor, acquires all rights as against the defendant/wrongdoer and is thus able to

bring an action against that party to recover the monies paid.").

Here, it is clear that Plaintiff and Telegram Messenger have a business relationship. In fact, there were several Novation Agreements, transferring the service contract from Telegram to Plaintiff. As indicated by the deposition transcript:

> Q. Okay. And does GNM own any of the memory located inside any of the servers located on the sixth floor of the building contained in the Miami data center?
> A. I don't know how to answer that question. I will try to decipher it. After the employees of the Level 3 so to speak -- well, it's probably not correct to accuse anyone here, but after the incident of the disappearance of memory cards -- so Telegram Messenger, our client, lost their memory cards, and GNM, in order to cover for that, bought at their own expense, at their own expense the memory cards and installed them (Appellant's Appendix Vol II. Pg. 277; ln. 10-23.

As such, it is clear that Plaintiff made the payment to protect his own business interest with Telegram, did not do it voluntarily, clearly was not primarily liable for the debt, paid for the entire value of the chips by buying new chips, and there would be no injustice to the third party- i.e. Telegram Messenger, for Plaintiff to be compensated for the amount he spent on the chips to replace them.

Ultimately, equitable subrogation" is "[s]ubrogation that arises by operation of law or by implication in equity to **prevent fraud or injustice**." Id. Similar to other equitable remedies, equitable subrogation is "founded on

the proposition of doing justice without regard to form." *Underwriters at Lloyds v. City of Lauderdale Lakes*, 382 So. 2d 702, 704 (Fla. 1980).

Here, the District Court needed to do justice WITHOUT regard to form. Assuming that Plaintiff did not own the chips, it is true that Plaintiff paid for their replacement, and Plaintiff should be compensated for spending the money to replace the chips that were in Defendant's possession in a bailee/bailor relationship. If that were not to occur, it would be unfair, or, in legal terms, inequitable, for Defendant to do a wrong, have Plaintiff pay for that wrong, and be shielded from justice.

However, if that is unclear, then it surely creates an issue of material fact. On one hand, Appellant, based on the testimony and the Novation Agreements, have a contractual and business relationship with Telegram Messenger. Telegram Messenger's memory chips, that Appellant is responsible for maintaining, was stolen. Appellant replaced the stolen chips and demanded compensation from the bailee. Whether the subrogation was done voluntarily, or at all, is not a question for a Court, but a question for a jury.

## III. The District Court Should Have Considered the Equitable Subrogation Argument

In the District Court's Omnibus Order, the District Court states that Plaintiff did not give Defendant any notice, much less "fair notice" of an equitable subrogation claim. Although this is generally true, Equitable Subrogation is not a Cause of Action that can be plead. For example, in *Memorandum Transp. Int'l Pool, Inc. v. Lyons*, 609 So. 2d 658, 663 (Fla. 4th DCA 1992)the Fourth District Court of Appeal found that that TIP did not need to plead equitable subrogation in its amended complaint for indemnity against Salmon, and TIP did not need to raise this argument in its Memorandum of Law in opposition to Salmon's Motion for Summary Judgment.

In that, The Fourth District Court of Appeal reversed each of the final judgments on appeal and remand to allow TIP f/u/b/o HOME to amend its amended complaint against Salmon to request relief by way of equitable subrogation and for such further proceedings in each of the actions as may be necessary and appropriate in view of its opinion.

Likewise, in *Kala Invest., Inc. v. Sklar*, 538 So. 2d 909 (Fla. 3d DCA 1989) the Third District Court of Appeal found that Equitable Subrogation need not be plead and may be relied upon when it was for the first time in a

Reply brief to summary judgment. The Third District Court of Appeal also held that

> "By whatever name--equitable subrogation, indemnity, or contribution--Kala seeks reimbursement from the co-defendants of the money that it paid to the plaintiffs because it was the co-defendants, not Kala, who were actually responsible for the plaintiffs' injuries.")

Moreover, *Dade Cty. Sch. Bd. v. Radio Station Wqba*, 731 So. 2d 638, 644 (Fla. 1999) is a Florida Supreme Court case where the issue of Equitable Subrogation was raised for the first time in Post-Hearing Motions, never having been raised in the pleadings.

The Third District Court of Appeal affirmed the trial court on all grounds except on equitable subrogation, which, even though it was never plead or raised at trial, the Third District Court of Appeals found that Three Kings was entitled to that relief. See generally *Dade Cty. Sch. Bd. v. Radio Station Wqba*, 699 So. 2d 701, 703 (Fla. 3d DCA 1997)

The Third District Court of Appeal found The right of subrogation is not necessarily confined to those who are legally bound to make payments, but extends as well to persons who pay the debt in self protection, since they might suffer loss if the obligation is not discharged. *Id*.

Moreover, under equitable subrogation, "the person discharging the debt stand[s] in the shoes of the person whose claim has been discharged,

thereby succeeding to the rights and priorities of the original creditor." *Eastern Nat'l Bank v. Glendale Fed. Sav. Loan Ass'n*, 508 So.2d 1323, 1324 (Fla. 3d DCA 1987); see also *Clearly Bros. Constr. Co. v. Upper Keys Marine Constr., Inc.*, 526 So.2d 116, 116-17 (Fla. 2d DCA 1988) ("In subrogation, the subrogee, now in the same posture as the plaintiff/subrogor, acquires all rights as against the defendant/wrongdoer and is thus able to bring an action against that party to recover the monies paid.").

As such, the Supreme Court of Florida found that Equitable Subrogation was proper post-trial, even though it had never been plead in any document.

This case is no different. The issue of equitable subrogation, although never having been plead, should have been resolved at trial based on the fundamental fact that Telegram Messenger and Global Network had a valid business relationship, supported by documents and oral testimony.

Memory Chips in the custody and possession of Defendant were taken. Plaintiff is innocent, had to pay for those chips because of its duty to maintain those chips to Telegram, and did, indeed, pay for those chips.

## IV. The Court Allowed Defendant to Violate Its Own Stipulation

Originally, Defendant filed its Motion for Summary Judgment on December 18, 2023. The District Court held Oral Argument on the Cross Motions for Summary Judgment on March 12, 2024. In that hearing, the District Court indicated that it, even notwithstanding the jurisdictional issue, would likely **NOT** grant summary judgment because there are too many issues in dispute. After Plaintiff submitted its Third Amended Complaint, the parties, JOINTLY, submitted a Joint Scheduling Report Paragraph 9 of that Joint Scheduling Report states as follows:

> **9. A list of all pending motions, whether each motion is "ripe" for review, the date each motion became ripe, and a summary of the parties' respective positions with respect to each ripe motion:**
>
> There are currently no pending motions. That said, Defendant expects that it may file a second motion for summary judgment upon completion of outstanding discovery related to whether Plaintiff is the proper corporate successor to Global Network Management, Ltd.

This Joint Scheduling Report was signed by Scott M. Dimond and Andre G. Raikhelson on behalf of the respective parties. Although this is a Joint Scheduling Report, Courts have held that Joint Scheduling Reports constitute stipulations used to streamline cases. See *Freeman v. NIBCO, Inc.*, 526 F. Supp. 3d 1112, 1121 (N.D. Ala. 2020)(citing to *G.I.C. Corp. v. United States*, 121 F.3d 1447, 1450 (11th Cir. 1997). District Courts must uphold

stipulations unless enforcement would cause a manifest injustice. See *Hill v. Nelson*, 676 F.2d 1371, 1373 n.8 (11th Cir. 1982)[11].

Here, based on the Oral Pronunciations at the March 12, 2024 hearing, the parties felt, at the time of the joint stipulation, that the only matter that warranted a decision on summary judgment was the jurisdictional issue.

The District Court's determination that the statement, "Defendant expects that it may file a second motion for summary judgment upon completion of outstanding discovery related to whether Plaintiff is the proper corporate successor to Global Network Management, LTD," is not a stipulation constitutes manifest injustice. Although the statement does not use the word "stipulate," courts have long recognized that procedural statements may be treated as binding stipulations when their practical effect is to limit a party's arguments.see generally *Esch v. Forster,* 123 Fla. 905, 168 So. 229, 231 (1936)(holding that "A stipulation that limits the issues to

---

[11] Hill is an interesting case, because the quote is: Plaintiff seeks to distinguish *Levine v. Wyatt*, supra, by noting that the stipulation in the instant case was filed after entry of the judgment. We do not find the distinction significant. **The court in Levine was concerned with the contents of the stipulation, not the time at which the parties filed the document**. Moreover, the stipulation in the instant case clearly states that the parties agree to reduce any judgment by $ 5,000. Courts will normally enforce a stipulation unless enforcement would cause a manifest injustice. *Logan Lumber Co. v. Comm.*, 365 F.2d 846, 855 (5th Cir. 1966); *Marshall v. Emersons Ltd.*, 593 F.2d 565, 568-69 (4th Cir. 1979).

be tried ‘amounts to a binding waiver and elimination of all issues not included).

Significantly, this statement was made after Defendant had the benefit of an original motion for summary judgment, the Court’s interpretation of that argument, and multiple years of additional litigation. In that context, the statement cannot reasonably be interpreted as mere procedural intent; it reflects a deliberate decision by Defendant to limit its arguments regarding the corporate successor issue, with full knowledge of prior rulings and the strategic landscape.

A stipulation is "any agreement made by attorneys respecting business before the court." *McDaniel v. Oliver*, 172 Ga. App. 109, 322 S.E.2d 1, 2 (Ga. Ct. App. 1984).

Parties to stipulations and agreements entered into in the course of judicial proceedings will not be permitted to take positions inconsistent therewith in the absence of fraud, duress or mistake." *Thompson v. Thompson*, 237 Ga. 509, 228 S.E.2d 886, 887 (Ga. 1976). Likewise, a stipulation between parties, particularly in the litigation context when approved by the court is a binding contract enforceable on the basis of

contract principles." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1365 (11th Cir. 2006).

The district court's contrary ruling disregards the **reasonable interpretation of the parties' procedural filings**, particularly in light of Defendant's full knowledge and procedural advantage. Because the statement functionally operated as a stipulation, the court erred in denying that characterization. This Court should therefore reverse and recognize the statement as a binding limitation on Defendant's arguments regarding Plaintiff's status as the proper corporate successor

## EARLIER DECISIONS
## SHOWING THE COURT'S CUMULATIVE ERROR

### I. Introduction

The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing [*15] to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal. Burke v. Smith, No. 1:20-CV-1096-AT, 2021 LX 22598, at *14-15 (N.D. Ga. Mar. 22, 2021)(citing United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005)

Although Defendant's Motion for Summary Judgement was granted on other grounds, and had nothing to do with the issues giving rise to

Article III standing as opposed to prudential standing, the cumulative errors that the District Court performed lead to the granting of summary judgment. If not for that, the District COurt would have ultimately denied it based on the first Motion for Summary Judgment, and Plaintiff would have been entitled to his trial.

The following caused cumulative error:

## II. Allowing Appellee To Raise Prudential Standing When It was Never Plead

Although subject matter jurisdiction can be brought at any time, Appellee's argument that standing cannot be waived is untrue. As a threshold matter, lack of standing was never brought as an answer to affirmative defense to the original Amended Complaint, and was only brought in when the Court improperly dismissed the Amended Complaint.

Defendant never filed any motion for leave to amend the affirmative defense regarding standing, even though it, in theory, could have. Persuasive to this Court should be *Bancor Grp. Inc. v. Rodriguez*, No. 22-cv-20201 GAYLES/TORRES, 2023 U.S. Dist. LEXIS 177913, at *5 n.5 (S.D. Fla. Oct. 3, 2023).

In *Rodriguez*, the Court notes that the defendants have likely waived

any arguments regarding statutory (or prudential) standing.

While the Eleventh Circuit has not decided the issue, *Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1358 (11th Cir. 2003), other appellate courts have held that prudential standing requirements, unlike Article III standing, may be waived.

To have Article III standing, "[t]he plaintiff must show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress." *Wilderness Soc'y v. Kane Cty.*, 632 F.3d 1162, 1168 (10th Cir. 2011).

The prudential standing doctrine, on the other hand, embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked. *Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct. 3315, 3324 (1984).

Here, Defendant is claiming that because Global Network Management, LTD “ceased to exist” and thus no longer has standing to bring this claim. As such, this is prudential standing, and not Article III standing.

## III. Denying a Motion to Comply with Rule 17(a)

Here, Defendant has raised, as an issue, items related to Rule 17(a). Under Federal Rule of Civil Procedure 17, which provides:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest. Fed. R. Civ. P. 17(a)(3).

Under Rule 17 of the Federal Rules of Civil Procedure, a defendant may assert as an affirmative defense that the plaintiff is not the real party in interest. *Addax Energy SA v. M/V Yasa H. Mulla,* 987 F.3d 80, 85 (4th Cir. 2021). This is what the Court has allowed Defendant, Cirion Technologies Solutions, LLC to do. Rule 17(a) requires "that the complaint be brought in the name of the party to whom that claim belongs or the party who, according to the governing substantive law, is entitled to enforce the right." *Rawoof v. Texor Petroleum Co*., 521 F.3d 750, 756 (7th Cir. 2008).

The primary purpose of the Rule is to protect the defendant against a subsequent action by the party actually entitled to recover, thereby ensuring that a defendant will not be subject to multiple lawsuits. *RK Co. v. See*, 622 F.3d 846, 850 (7th Cir. 2010).

Because the purpose of the rule is not to win on a technicality, but to ensure that defendant is not subject to multiple lawsuits, Rule 17(a)(3) states that a

> "court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Rule 17(a)(3); *Weissman v. Weener*, 12 F.3d 84, 87 (7th Cir. 1993).

Here, Plaintiff requested that the Court allow Global Network Management, Inc. to join or substitute for Global Network Management, LTD. Moreover, Plaintiff, also requested to ratify, or allow Global Network Management, LTD to proceed with the lawsuit.

However, the District Court denied Plaintiff's motion on all grounds, and subsequently dismissed the action.

## IV. Denial of Reconsideration On the Rule 17 Issue

Sometime later, the District Court denied, in a Paperless Order, a request for rehearing and reconsideration. The rationale was that:

> The record reflects that Global Ltd. was organized under the law of the British Virgin Islands. ECF No. [93-1]. However, Global Ltd. provides no legal authority that a dissolved BVI company has the power to maintain a lawsuit following dissolution.

However, even though some cases, admittedly, state that the Court has no obligation to conduct independent research to determine what the foreign

law is, where no party raises the issue of foreign law, the Court should assume that it is consistent with the law of the forum, in this case, Florida. See *Walter v. Neth. Mead N.V.*, 514 F.2d 1130, 1137 n.14, 11 V.I. 559 (3d Cir. 1975) (concluding that although the law of the Netherlands ostensibly applied, where a party did not conclusively establish the foreign law, the court should assume it is consistent with the law of the forum); *In re Chiquita Brands Int'l, Inc. Alien Torts Statute*, No. 08-MD-01916-MARRA, 2022 U.S. Dist. LEXIS 239721 (S.D. Fla. Dec. 15, 2022).

The Court, instead of assuming that Florida law applies, held that BVI law applies, but did not inquire as to what BVI law was, and then punished Plaintiff for not raising the issue, again, on something that was never raised in a responsive pleading

## **Conclusion**

As such, Global Network Management asks this Court to reverse the District Court so that it may, finally, get a fair day in court.

Date: December 4, 2021

Respectfully submitted,

Law Offices of Andre G. Raikhelson, LLC.
7000 W. Palmetto Park Road, Suite 210
Boca Raton, Florida 33433
Tel. 954-895-5566
Fax. 305-328-9012
Primary: arlaw@raikhelsonlaw.com

/s/ Andre G. Raikhelson
Andre G. Raikhelson, Esq.
Bar Number: 123657

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with F. R. App. 32 in which this principle brief contains no more than 13,000 words (specifically, it uses 12,356 words including the table of contents and table of authorities).

/s/ Andre G. Raikhelson,
Florida Bar No. 123657

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 06. 2025, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system. I also hereby certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Andre G. Raikhelson, Esq.
Andre G. Raikhelson, Esq.