IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO. 25-13166
DISTRICT COURT DOCKET NO. 20-cv-20723-JB

---

GLOBAL NETWORK MANAGEMENT, INC.,

*Plaintiff-Appellant,*

v.

CIRION TECHNOLOGIES SOLUTIONS, LLC,

*Defendant-Appellee.*

CASE NO. 25-11524-D

---

# BRIEF OF DEFENDANT-APPELLEE

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

---


Elliot B. Kula
KULA & ASSOCIATES, P.A.
12000 Biscayne Blvd., Ste. 221
Miami, Florida 33181
Telephone: (305) 354-3858
Facsimile: (305) 354-3822
eservice@kulalegal.com
elliot@kulalegal.com

Scott M. Dimond
DIMOND KAPLAN & ROTHSTEIN, P.A.
2665 South Bayshore Dr., PH-2B
Miami, Florida 33133
Telephone: (305) 374-1920
Facsimile: (305) 374-1961
Sdimond@dkrpa.com

*Co-Counsel for Defendant-Appellee*

*GLOBAL NETWORK MANAGEMENT, INC. V. CIRION TECHNOLOGIES SOLUTIONS, LLC*

**CASE NO. 25-13166**

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Defendant-Appellee, Cirion Technologies Solutions, LLC, submits this list, which includes the trial judge, and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this review:

1. Becerra, Hon. Jacqueline, *U.S. District Judge*
2. Cirion Technologies Solutions, LLC (f/k/a Lumen Technologies, Inc., f/k/a CenturyLink Latin American Solutions, LLC, f/k/a Level 3 Latin American Solutions, LLC), *Defendant-Appellee*
3. Dimond, Kaplan, & Rothstein, P.A., *Attorneys for Plaintiff-Appellee*
4. Dimond, Scott M., Esq., *Attorney for Defendant-Appellee*
5. Global Network Management, *Plaintiff-Appellant*
6. Kula & Associates, P.A., *Attorneys for Defendant-Appellee*
7. Kula, Elliot B., Esq., *Attorney for Defendant-Appellee*
8. Law Offices of Andre G. Raikhelson, LLC, *Attorneys for Plaintiff-Appellant*
9. Prüss, Lorenz Michel, Esq., *Attorney for Defendant-Appellee*

**CERTIFICATE OF INTERESTED PERSONS**
**AND**
**CORPORATE DISCLOSURE STATEMENT**
(Continued)

10. Raikhelson, Andre G., Esq., *Attorney for Plaintiff-Appellant*
11. Shamayev Law P.A., *Attorneys for Plaintiff-Appellant*
12. Shamayev, Stanislav A., Esq., *Attorneys for Plaintiff-Appellant*

Pursuant to Federal Rule of Appellate Procedures 26.1 and Eleventh Circuit Rules 26.101 through 26.1-3, Defendant-Appellee, Cirion Technologies Solutions, LLC, makes the following statement as to corporate ownership:

Cirion Technologies Solutions, LLC is a Florida limited liability company, not publicly traded, and no publicly held corporation owns ten percent (10%) or more of its stock.

/s/ **Elliot B. Kula**
Elliot B. Kula

## STATEMENT REGARDING ORAL ARGUMENT

The facts are well established by the Record on Appeal and the governing law is fully settled, with a deferential standard of review to be applied. Oral argument would not be a beneficial expenditure of judicial or litigant resources.

## TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT .......... C-1

STATEMENT REGARDING ORAL ARGUMENT .......... i

TABLE OF CONTENTS .......... ii

TABLE OF CITATIONS .......... iv

STATEMENT OF JURISDICTION .......... 1

STATEMENT OF THE CASE .......... 1

- I. COURSE OF PROCEEDINGS. .......... 1
- II. STATEMENT OF THE FACTS .......... 4
  - A. Relationship between the Parties Predecessors and the Parties. .......... 4
  - B. The Prior Action .......... 8
  - C. The Underlying Action .......... 9
- III. STATEMENT OF THE STANDARD OF REVIEW .......... 22

SUMMARY OF ARGUMENT .......... 23

ARGUMENT .......... 24

- I. THE DISTRICT COURT PROPERLY CONCLUDED THAT GNM INC.'S ADMITTED LACK OF OWNERSHIP OF THE MEMORY WAS FATAL TO THE BAILMENT CLAIM .......... 24
  - A. Bailment Requires Ownership, Not Mere Possession .......... 24

**TABLE OF CONTENTS**
(Continued)

**Page**

B. GNM Inc. Cannot Establish Ownership Via a Novation Argument ....................31

C. GNM Inc. Cannot Use "Equitable Subrogation" to Prove Ownership in the Context of Bailment ....................32

II. THERE WAS NO STIPULATION PRECLUDING CIRION FROM FILING ITS MOTION FOR SUMMARY JUDGMENT ....................36

III. GNM INC. WAS NOT PREJUDICED BY ANY "CUMULATIVE ERROR" ....................40

A. Cirion Did not Waive Its Proper Party Argument ....................40

B. GNM Inc.'s Reliance on Rule 17(a) Is Baseless ....................43

C. Denial of the Reconsideration Motion Was Proper ....................45

CONCLUSION ....................49

CERTIFICATE OF COMPLIANCE ....................50

CERTIFICATE OF SERVICE ....................50

## TABLE OF CITATIONS

**Page**

***Cases***


*A.L. v. Jackson Cnty. Sch. Bd.*, 635 Fed. Appx. 774 (11th Cir. 2015) ....................47

*Armored Car Serv., Inc. v. First Nat'l Bank of Miami*, 114 So. 2d 431 (Fla. 3d DCA 1959) ..........................................................................................29

*Atlantic Coast Line R. Co. v. Partridge* 58 Fla. 153 (Fla. 1909) ............................29

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................34

*Chubb Seguros Chile S.A. v. Freight Logistics Int'l LLC*, 588 F. Supp. 3d 1312 (S.D. Fla. 2022) ..........................................................................................27

*Cleary Bros. Const. v. Upper Keys Marine Const. Inc.*, 526 So. 2d 116 (Fla. 3d DCA 1988) ..........................................................................................35

*Coon v. Georgia Pac. Corp.*, 829 F.2d 1563 (11th Cir. 1987) ............ 21, 33, 34, 36

*Coventry First LLC v. Jerome Golden Irrev. Ins. Trust*, 2010 WL 11597584, *1 (S.D. Fla. Feb. 8, 2010) .......................................................................... 27, 28

*Dantzler Lumber & Export Co. v. Columbia Cas. Co.*, 156 So. 116 (Fla. 1934)....35

*De Fernandez v. Seaboard Marine, Ltd.*, 2022 WL 2869730, *1 (S.D. Fla. July 21, 2022) ..........................................................................................47

*Eastern Nat'l Bank v. Glendale Fed. Sav. And Loan Ass'n*, 508 So. 2d 1323 (Fla. 3d DCA 1987) ..........................................................................................35

*Emerson v. Lambert*, 374 So. 3d 756 (Fla. 2023) ........................................... 27, 28

*Esch v. Forster*, 123 Fla. 905 (Fla. 1936) ..............................................................38

*Fagan v. Central Bank of Cyprus*, 2021 WL 2845034, *1 (S.D. Fla. June 28, 2021) .......................................................................................... 26, 28

*Florida East Coast Ry. Co. v. Peters*, 72 Fla. 311 (Fla. 1916) ...............................30

**TABLE OF CITATIONS**
(Continued)

**Page**

*Freeman v. NIBCO, Inc.*, 626 F. Supp. 3d 1112 (N.D. Ala. 2020) ........................39

*Gilmore v. Gates, McDonald & Co.*, 382 F. 3d 1312 (11th Cir. 2004)..................33

*Glob. Network Mgmt., Ltd. v. CenturyLink Latin Am. Sols.*, LLC, 67 F.4th 1312 (11th Cir. 2023)........................................................................... 1, 10, 11

*Global Network Management v. Level 3 Communications, LLC*, S.D. Fla. Case No.: 18-cv-24560 ..........................................................................8, 9

*Hill v. Nelson*, 676 F.2d 1371 (11th Cir. 1982).....................................................38

*Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992 (11th Cir. 1982) ......... 32, 41

*Kellogg v. Schreiber (In re Kellogg)*, 197 F.3d 1116 (11th Cir. 1999) ..................22

*Kitchen v. Wachovia Bank & Trust Co., N.A.*, 260 S.E.2d 772 (N.C. App. 1979)..29

*Mann v. Taser Int'l, Inc.*, 588 F.3d 1291 (11th Cir. 2009)....................................22

*McDaniel v. Oliver*, 172 Ga. App. 109 (Ga. Ct. App. 1984).................................39

*Meeks ex rel. Estate of Meeks v. Fla. Power & Light Co.*, 816 So. 2d 1125 (Fla. 5th DCA 2002)........................................................................ 27, 28, 29, 30

*Ofer v. Roher*, 2025 WL 18648, *1 (S.D. Fla. Jan. 2, 2025)........................... 46, 48

*Potts v. Budget Rent a Car System, Inc.*, 2005 WL 3057175, *1 (N.D. Fla. Nov. 14, 2005) ........................................................................................ 25, 26

*RK Co. v. See*, 622 F.3d 846 (7th Cir 2010) ........................................................45

*Rodriguez v. Geovera Specialty Ins. Co.*, 426 F. Supp. 3d 13180 (S.D. Fla. 2019)33

*Schmidt v. Washington Newspaper Publ'g Co., LLC*, 2018 WL 6422705, *1 (S.D. Fla. Dec. 6, 2018).........................................................................................48

*Sirpal v. University of Miami*, 684 F. Supp. 2d 1349 (S.D. Fla. 2010)........... passim

## TABLE OF CITATIONS
(Continued)

**Page**

*Spliethhoff Bevrachtingskantoor B.V. v. United Yacht Transport, LLC*, 2022 WL 17067798, *1 (S.D. Fla. 2022)....................33

*Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357 (11th Cir. 2006)....................39

*Su v. Local 568, Transp. Workers Union of Am., AFL-CIO*, 699 F. Supp. 3d 1333 (S.D. Fla. 2023)....................46

*Thompson v. Branch Banking & Tr. Co.*, 2020 WL 1976246, *1 (S.D. Fla. Apr. 24, 2020) ....................42

*Thompson v. Thomspon*, 237 Ga. 509 (Ga. 1976) ....................39

*Underwriters at Lloyds v. City of Lauderdale Lakes*, 382 So. 2d 702 (Fla. 1980) 34, 36

*Walker v. Jones*, 10 F.3d 1569 (11th Cir. 1994)....................31

*Will v. Calvert Fire Ins. Co.*, 437 U.S. 655 (1978)....................22

*Young v. City of Palm Bay*, 358 F.3d 859 (11th Cir. 2004).................... 22, 37, 41

***Statutes***

28 U.S.C. § 1291....................1

28 U.S.C. § 1332....................1

***Rules***

Fed. R. Civ. P. 8(c)....................32

FEd. R. Civ. P. 17(a) .................... passim

Fed. R. Civ. P. 25(c).................... passim

***Treatises***

**TABLE OF CITATIONS**
(Continued)

**<u>Page</u>**

8 C.J.S. Bailments §2 ..........................................................................................26

## STATEMENT OF JURISDICTION

The district court properly exercised subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 (2023), because the parties are diverse and the amount in controversy exceeds the jurisdictional threshold. This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291 (2023), because this appeal arises from a final judgment of the district court.

## STATEMENT OF THE CASE

### I. COURSE OF PROCEEDINGS.

Global Network Management, Ltd. ("GNM Ltd.") filed suit against CenturyLink Latan American Solutions, LLC ("LATAM"), the predecessor of Defendant/Appellant Cirion Technologies Solutions, LLC ("Cirion"), which suit was removed to the Southern District of Florida. [DE:1].

The complaint, as amended, *see* [DE:24] (asserting claims for Implied Bailment (Count I), Breach of Implied Contract in Law (Count II), and Breach of Implied Contract in Fact (Count III)), was dismissed. [DE:36].

On appeal, this Court affirmed the dismissal of GNM Ltd.'s claims for breach of contract implied in law and breach of contract implied in fact, but reversed on the claim for implied bailment and remanded for further proceedings. *Glob. Network Mgmt., Ltd. v. CenturyLink Latin Am. Sols.*, LLC, 67 F.4th 1312 (11th Cir. 2023) (*Glob. Network Mgmt. I*).

On remand, LATAM filed its answer and affirmative defenses. [DE:50]. LATAM also moved to update the case caption to reflect that Cirion would be the defendant going forward [DE:55], which motion the district court granted. [DE:56].

The district court deferred on cross-motions for summary judgment, ordering GNM Ltd. to file "a memorandum or appropriate motion addressing" its "ability to continue prosecuting this action given the representation that the Plaintiff no longer exists and/or has otherwise been dissolved." [DE:88].

GNM Ltd. then moved to deem Cirion's "ability to continue prosecuting" argument to be waived or, alternatively, for leave to substitute GNM Ltd. with Global Network Management, Inc. ("GNM Inc."), GNM Ltd.'s alleged successor. [DE:89]. When the district court struck the motion [DE:94], GNM Ltd. again moved to substitute GNM Inc. as plaintiff. [DE:93]. After a hearing, the district court denied the motion to substitute and dismissed the amended complaint without prejudice for the claim to be refiled by the appropriate plaintiff. [DE:101; DE:103].

The district court eventually denied the competing summary judgment motions as moot. [DE:105]. But in the interim, GNM Inc. filed a second amended complaint, alleging its right to sue as successor in interest to GNM Ltd. [DE:104]. On Cirion's motion, the district court dismissed the second amended complaint without prejudice. [DE:117].

GNM Inc. then filed a third amended complaint (the operative complaint), asserting the single count of Implied Bailment. [DE:119]. Cirion filed its answer and affirmative defenses, [DE:126], and sought discovery on the successor issue.

Cirion then moved for sanctions, including a request to strike GNM Inc.'s pleadings, for discovery violations. [DE:137]. The district court ordered a response, [DE:141], and GNM Inc. moved to recuse the district court judge. [DE:143]. The district court denied the recusal motion. [DE:147]. And, following a hearing on the

sanctions motion [DE:145], the district court ordered GNM Inc. to produce the overdue documents responsive to Cirion's discovery requests. [DE:146]. GNM Inc. filed a notice of compliance, while Cirion filed a notice of deficiencies. [DE:148; DE:149].

The district court rejected attempts by GNM Inc. to seek reconsideration of the order denying the substitution of parties and clarification of the discovery order (after allowing hearings on both), ordered GNM Inc.'s Chief Executive Officer ("CEO"), Vladimir Vedeneev ("Mr. Vedeneev"), to appear for deposition, and awarded Cirion attorneys' fees and costs. [DE:159; DE:160]. GNM Inc.'s attempts at reconsideration of those orders was denied. [DE:164; DE:168].

Still not done with its motion practice, GNM Inc. moved to clarify and affirm a purported "stipulation of the parties as to summary judgment." [DE:180]. The district court denied the motion, noting that it had "not limited the scope of summary judgment nor ratified any purported stipulation between the parties regarding summary judgment." [DE:181].

At that point, on renewed cross-motions for summary judgment [DE:184; DE:187], the district court ordered supplemental memos to address "[w]hether [Cirion] is entitled to judgment as a matter of law on [GNM Inc.'s] claim for implied bailment in light of the undisputed fact that the memory cards and servers at issue were not owned by Plaintiff." [DE:202]. Following that supplemental briefing [DE:203; DE:204], the district court entered an order denying GNM Inc.'s motion and granting Cirion's motion. [DE:210].

The district court entered Final judgment in favor of Cirion against GNM Inc. [DE:211]. And this appeal followed. [DE:212].

## II. STATEMENT OF THE FACTS.

### A. Relationship between the Parties Predecessors and the Parties.

On July 22, 2014, GNM Ltd.'s predecessor to the contract fueling the litigation between the parties— Telegram Messenger, LLP ("Telegram") — signed a master service agreement (the "2014 MSA") with Level 3 Communications GmbH ("Level 3 Germany"). [DE:24:¶9]. The 2014 MSA controlled the relationship between Telegram and Level 3 Germany's companies globally. *Id.*

On March 6, 2015, Telegram and LATAM entered a US Addendum Agreement ("US Addendum"), which referred to the 2014 MSA and provided for the services in the United States. [DE:24:¶10].

Between June 21 and 22, 2017, Telegram and Level 3 Germany signed a letter of agreement (the "LOA") substituting Telegram Corp. for Telegram Messenger LLP, cancelling the 2014 MSA, and entering a new master service agreement (the "2017 MSA"). [DE:24:¶11].

On February 12, 2018, Level 3 Germany, Telegram Corp, and GNM Ltd. signed a novation agreement (the "First Novation Agreement"). [DE:24:¶12]. Under the terms of the First Novation Agreement, GNM Ltd. succeeded Telegram Corp. and all rights and duties were assigned to GNM Ltd., which accepted the assignment of rights and duties. [DE:24:¶12].

On February 14, 2018, LATAM, GNM Ltd., and Telegram Corp. entered another novation agreement (the "Second Novation Agreement") under which GNM Ltd. substituted for Telegram Corp. under the US Addendum and other orders signed by LATAM and Telegram Corp. [DE:24:¶13]. GNM Ltd. contended that the Second Novation Agreement is the parties' governing document. [DE:24:¶14].

On September 20, 2017, GNM Ltd. ordered 224 computer servers (the "First Order") through Super Micro Computer, Inc. ("Super Micro"). [DE:24:¶15]. The First Order was delivered to a Data Center and accepted by LATAM on November 15, 2017 (the "November Delivery"). *Id.*

On February 18, 2018, GNM Ltd. ordered an additional 224 servers (the "Second Order") through Super Micro. [DE:24:¶16]. The Second Order was delivered to the Data Center ("Data Center") and accepted by LATAM on April 10, 2018 (the "April Delivery"). *Id*.

The November Delivery servers were unpacked and installed between November 13 and November 15, 2017 in the cabinets allocated to GNM Ltd. in the 6th floor Data Center. [DE:24:¶18]. GNM Ltd. intended to connect the servers to its network to run its service. [DE:24:¶20].

All April Delivery servers were unpacked and installed between April 12 and April 13, 2018, in the cabinets allocated to GNM Ltd. in the Data Center's 6th floor. In addition, 12 servers left from November Delivery were also installed at that time. [DE:24:¶19]. Once installed, GNM Ltd. intended to connect the servers to a network operated by GNM Ltd. [DE:24:¶20].

On or about April 28, 2018, GNM Ltd.'s CEO, Mr. Vedeneev, arrived at the Data Center to complete the installation of the servers and connect them to GNM Ltd.'s network. [DE:24:¶20]. Allegedly, Mr. Vedeneev discovered at that time that 1,380 memory cards (the "Memory")were missing from the servers. [DE:24:¶21].

GNM Ltd. alleged that before the November and April Deliveries, Mr. Vedeneev entered into a separate employment relationship with LATAM employee, Diego Oubina ("Mr. Oubina"), the manager of the Data Center, whom Mr. Vedeneev hired personally to install delivered servers into GNM Ltd.'s cabinets. [DE:24:¶23]. GNM Ltd. alleged that Mr. Vedeneev requested that Mr. Oubina unpack and install the servers into GNM Ltd.'s cabinets in the Data Center. [DE:24:¶25]. GNM Ltd. alleged that Mr. Vedeneev hired Mr. Oubina with the expectation that all security protocols that were standard for the Data Center would be employed for the purposes of the installation. [DE:24:¶23].

For the April Delivery, GNM Ltd. alleged that Mr. Oubina hired – purportedly without Mr. Vedeneev's knowledge or authorization – outside contractors to help him do the job (the "Contractors"). [DE:24:¶26]. Mr. Vedeneev allegedly expected Mr. Oubina to hire other LATAM employees to assist in the installation instead. [DE:24:¶24].

GNM Ltd. acknowledged that the Data Center has a vigorous authorization process for employees, non-employees, and customers to enter the facility. [DE:24:¶27]. According to GNM Ltd., an individual needs to go through a modern security system (which employs key access cards, security, metal detectors, cameras, and elevator keypads) to enter both the building and the sixth floor Data Center.

[DE:24:¶4, DE:28]. GNM Ltd. contended that even Mr. Vedeneev could not enter the Data Center without first identifying himself. *Id*.

GNM Ltd. alleged that Mr. Oubina, using his position as a manager, escorted the Contractors into the Data Center to help him install the GNM Ltd. Servers. [DE:24:¶¶29-30]. Nonetheless, GNM Ltd. alleged that the Contractors were never given a ticket to access the Data Center, did not sign into any logbook, did not have access badges, and were not escorted in and out of the Data Center. [DE:24:¶44].

While GNM Ltd. contended that LATAM maintains considerable security to safeguard any items in the Data Center, [DE:24:¶¶32-39], GNM Ltd. conceded that any item stored in the Data Center remains available to the owner. [DE:24:¶¶ 28, 36-38]. Indeed, GNM Ltd. acknowledges that even after its servers are installed in the Data Center, GNM Ltd. has continuous use of the servers, which were connected to and run the network that GNM Ltd. operated. [DE:24:¶ 20]. And, as reflected in the contract documents attached to the Amended Complaint, GNM has the right to access the Data Center 24 hours per day, 7 days per week. [DE:24-1:11].

After the discovery that the Memory purportedly was missing, GNM Ltd. alleged that LATAM conducted an investigation. [DE:24:¶40]. GNM Ltd. contended that this investigation was part of the deal that Mr. Vedeneev thought he was getting by storing "his" servers in a "Tier 1 facility." *Id.* But GNM Ltd. alleged that the particular type of investigation LATAM conducted was insufficient. [DE:24:¶¶41-53].

While "the rights and duties" of Telegram Corp. under certain agreements with Level 3 Germany were "transferred" to GNM Ltd., there is no evidence

anywhere that Telegram Corp. ever transferred ownership of the Memory. To the contrary, GNM Ltd. repeatedly confirmed that the Memory at issue belonged to Telegram Corp. when it allegedly went missing. Specifically, Mr. Vedeneev testified that GNM Ltd. did not own the Memory that went missing:

> Q. So the memory cards that were stolen that we're here to discuss today were owned by Telegram Messenger?
>
> A. Of course.
>
> ...
>
> Q. As were the servers from which the memory was purportedly removed?
>
> A. Of course.

[DE:186-3:10]. And Mr. Vedeneev further testified that GNM Ltd. had no duty to pay the actual owner for the loss of the Memory:

> Q. So GNM did not have the obligation to pay for those memory cards?
>
> A. No.

[DE:186-3:46]. And GNM Inc.'s answer to the 19th interrogatory is just as clear. *See* [DE:186-4] (confirming that GNM Inc. was *not* legally obligated to reimburse the owner of the Memory for any loss associated with the theft of the Memory).

**B. The Prior Action**

In November 2018, GNM Ltd. sued Level 3 Communications, LLC ("Level 3") in the case captioned *Global Network Management v. Level 3 Communications, LLC*, S.D. Fla. Case No.: 18-cv-24560 (the "First Action").

GNM Ltd. alleged that Level 3 was liable to GNM Ltd. for damages resulting from 1,380 memory cards going missing from the colocation Data Center in Miami, and GNM Ltd. sued Level 3 as the entity charged with handling security at the building housing the sixth-floor Data Center.

The district court dismissed the amended complaint with prejudice, in part because Level 3 had no contract with GNM Ltd. that contained the duties GNM Ltd. alleged Level 3 breached. And the presiding judge refused to permit GNM Ltd.'s proposed second amended complaint after concluding that amendment would be futile. [DE:35:3:n.2; DE:26:2]. This dismissal was not appealed.

### C. The Underlying Action

#### (1) The Original Complaint

On January 2, 2020, GNM Ltd. filed suit in state court, on the same allegations as raised in the First Action, this time naming as defendant LATAM, a different Level 3 affiliate. [DE:1-3]. GNM Ltd.'s initial Complaint (the "Original Complaint") asserted claims for: Breach of Contract (written); Negligent Bailment (implied contract); and Breach of Contract (implied in fact). *Id.*

Following LATAM's removal to the district court under 28 U.S.C. §1446(d), *see* [DE:1], LATAM moved to dismiss the Original Complaint. [DE:5].

The district court granted LATAM's motion to dismiss [DE:22] with prejudice as to Breach of Contract but without prejudice as to Negligent Bailment and Breach of Contract implied in fact.[DE:23].

GNM Ltd. filed an amended complaint, asserting claims against LATAM for: Implied Bailment; Breach of Implied Contract in Law; and Breach of Implied Contract in Fact (the "Amended Complaint"). [DE:24].

LATAM moved to dismiss the Amended Complaint. [DE:6]. The district court dismissed the Amended Complaint with prejudice (the "Dismissal Order"). [DE:35].

**(2) The First Appeal**

GNM Ltd. appealed the Dismissal Order (the "First Appeal"). During the First Appeal, this Court posed a series of jurisdictional questions to the parties concerning the corporate nature of GNM Ltd.

Specifically, the Court issued a detailed, page-long Jurisdictional Question that detailed GNM Ltd.'s allegations regarding GNM Ltd.'s origin and structure and asked it to "[p]lease address whether GNM, which appears to be a foreign entity, should be treated as a corporation or an unincorporated entity for purposes of diversity jurisdiction." *Glob. Network Mgmt. I,* Doc. No. 19-1. GNM Ltd. responded, asserting that "GNM is a 'limited' (LTD) company, and should be treated as 'unincorporated' for purposes of a diversity analysis." *Glob. Network Mgmt. I,* Doc. No. 20. For its part, LATAM agreed that the Court had diversity jurisdiction.

Unsatisfied with GNM Ltd.'s response, this Court asked a series of follow-up, "Supplemental Jurisdictional Questions," including "whether GNM is organized under the [British Virgin Islands ("BVI")] Business Companies Act" and "why a BVI limited corporation should be treated as an unincorporated entity as opposed to

a corporation for purposes of diversity jurisdiction." *Glob. Network Mgmt. I,* Doc. No. 24-1. Again, GNM Ltd. responded that, as a BVI limited company, it "should be treated as a corporation for diversity purposes." *Glob. Network Mgmt. I,* Doc. No. 25. And again, LATAM agreed with GNM Ltd., noting that LATAM "has no information on which to dispute GNM's answer to this question, but LATAM also has no reason to believe that GNM's response is not accurate." *Glob. Network Mgmt. I,* Doc. No. 26.

At no point during that deep-dive into GNM Ltd.'s corporate structure and its status as a BVI limited company did GNM Ltd. reveal to the Court (or to anyone else) that – as was later discovered – GNM Ltd. had in fact "ceased to exist" back in September 2000 and (purportedly) assigned its assets (including this claim) to Antigua corporation "GNM Inc."

Following oral argument, this Court resolved the First Appeal when it agreed that GNM Ltd.'s two contract claims were property dismissed but concluded that GNM Ltd. had plausibly stated a claim for bailment based on the parties' business arrangement as particularly alleged in the Amended Complaint. *Glob. Network Mgmt. I,* 67 F.4th at 1321.

**(3) A New Plaintiff Appears**

The matter was remanded to the district court, where litigation resumed. [DE:47]. LATAM filed its answer and affirmative defenses. [DE:50].

During litigation, LATAM moved (unopposed) to amend or correct the case caption to reflect new corporate ownership of LATAM by Cirion Technologies, LLC (LATAM will be referred to as "Cirion"). [DE:55].

Cirion took GNM Ltd.'s corporate representative deposition a second time to ascertain whether anything had changed during the appeal. At that deposition, Cirion learned for the first time that GNM Ltd. had "ceased to exist" as an entity "approximately" two years earlier. [DE:66:¶45]. And, more importantly to this appeal, GNM Ltd. *assigned away* all of its assets—including its claims here—to a different company located in Antigua called GNM, Inc. [DE:66:¶46].

Cirion raised the issue of GNM Ltd.'s undisclosed dissolution in Cirion's motion for summary judgment (the "First Cirion MSJ"). [DE:67]. The district court granted the parties' request for oral argument on their cross-summary judgment motions, and during the hearing the district court addressed LTD's dissolution. [DE:83].

GNM Ltd.'s main argument opposing the proper-party argument in the First Cirion MSJ was that Cirion waived its right to challenge GNM Ltd.'s status as plaintiff by raising it for the first time on summary judgment. [DE:71]. The district court rejected that argument, noting that – through no fault of its own – Cirion only learned of GNM Ltd.'s dissolution after filing is Answer and on the eve of the summary judgement deadline. [DE:221:24-25]. But the district court was troubled by the revelation that GNM Ltd. no longer existed and/or owned the claim it asserted. [DE:221:21-22].

Compounding the problem, GNM Ltd.'s counsel was unable to explain the status of its claims, alternating between suggesting that GNM Ltd. could still bring them and that they now belonged to GNM Inc. [DE:221:23-24]. The district court did not immediately rule on the parties' pending summary judgment motions. [DE:221:71-76]. Rather, the district court issued an order instructing that "Plaintiff shall file a memorandum or appropriate motion addressing its ability to continue prosecuting this action given the representation that the Plaintiff no longer exists and/or has otherwise been dissolved." (the "Order Requiring Explanation of Ability to Prosecute Action"). [DE:88].

GNM Ltd. responded with its "Motion to Deem Defendant's Standing Argument Waived, or Alternatively Motion for Leave to [Substitute] Global Network Management, Ltd with Global Network Management, Inc." (the "Motion to Substitute"). [DE:89]. GNM Ltd. sought to strike Cirion's proper-party argument based on the same waiver argument it had raised in response to the First Cirion MSJ, but, alternatively, stated that "Plaintiff seeks to substitute [GNM Ltd.] with [GNM Inc.]." [DE:89:7].

At the hearing that followed, the district court indicated that it would be striking GNM Ltd.'s Motion to Substitute. But the district court's ensuing order gave Plaintiff another chance to comply with the Court's prior Order Requiring Explanation of Ability to Prosecute Action. [DE:94]. And so, again on the same day as the hearing, GNM Ltd. filed its "Motion to Substitute Party, Join Party, or Leave as Is Party on the Basis of Judicial Discretion" (the "Second Substitution Motion"). [DE:93].

The Second Substitution Motion stated that "[i]t is clear that [GNM] Inc. has been assigned all of its interest from GNM Ltd." [DE:93:4]. So, GNM Ltd. requested alternative relief under Federal Rule of Civ. Procedure 25(c), asking the district court to either: (1) "Accept the undisputed fact that [GNM Inc.] has been assigned the assets and liabilities of [GNM Ltd.] and thus not join or substitute [GNM Inc.,] for [GNM Ltd.,] allowing this case to proceed" or (2) "Join or Substitute [GNM Inc.] by finding that [GNM Ltd.] has transferred its assets to [GNM Inc.] (implicitly or explicitly) and the transfer of assets constitute[s] a de facto merger." [DE:93:5]. The Second Substitution Motion did not mention Federal Rule of Civil Procedure 17(a) or ask the Court to allow GNM Ltd. to continue the case post-dissolution under either Florida or BVI law.

After a third hearing, the district court denied the Second Substitution Motion because: (1) GNM Ltd. failed to make a sufficient showing that GNM Inc. was its successor; and (2) GNM Ltd. "provide[d] no legal authority that a dissolved BVI company has the power to maintain a lawsuit following dissolution" (the "Substitution Order"). [DE:103:6, 9 10]. The district court noted that an entity's ability to continue litigation post-dissolution is a function of the law under which the entity was organized, in this case the BVI. [DE:103:9]. But the Second Substitution Motion never sought to use BVI law to allow GNM Ltd. to continue the case and failed to invoke Rule 17(a).

Cirion argued for dismissal, because GNM Ltd. did not exist and denied owning the claims here and GNM Inc. had failed to show that it did own them. But the district gave GNM Ltd. *another* chance to maintain the action by amending the

Amended Complaint on behalf of *whichever entity GNM Ltd. believed to be the proper party*. [DE:103:10 (original emphasis)].[1] The parties' pending summary judgment motions were denied as moot. [DE:105].

GNM Ltd. responded by filing a second amended complaint (the "Second Amended Complaint") <u>on behalf of GNM Inc.</u> [DE:104]. But it merely substituted the word "Inc." for "Ltd." without *any other change. Id.* So Cirion moved to dismiss the Second Amended Complaint, arguing that GNM Ltd.'s attempt at amendment allowed itself the Rule 25(c) substitution that the district court had denied. [DE:109]. The district court agreed and dismissed the Second Amended Complaint. [DE:117]. But the district court gave GNM Ltd. *yet another* chance to file its claims. *Id.*

**(4) The Third Amended Complaint, GDM Inc.'s Discovery Misconduct, and its Motion for Recusal**

And so, the *new* plaintiff, GNM Inc., filed a third amended complaint (the "Operative Complaint"), which became the operative complaint in this case. [DE:119]. GNM Inc. expressly alleged that it owned the claim at issue by virtue of a "*de facto* merger" with GNM Ltd. [DE:119:2]. Cirion answered the Operative Complaint and attacked GNM Inc.'s right to assert the bailment claim via its Eighth Affirmative Defense (GNM Inc. did not own the Memory) and Ninth Affirmative Defense (GNM Inc. was not a proper party). [DE:126].

---

[1]Cirion's counsel Scott M. Dimond did not "intentionally mislead the Lower Tribunal" during oral argument as Appellant asserts. IB:24 n.7. "GNM Inc., whatever that is, isn't here" is a correct statement; GNM Inc. had not filed a claim and had not yet sought to be substituted for GNM Ltd.

Given the new factual allegations regarding GNM Inc.'s purported *de facto* merger, the district court permitted Cirion discovery. [DE:133]. Cirion served its Second Request for Production (the "Second Request") seeking documents relating to merger and, more generally, to the relationship between GNM Ltd. and GNM Inc. in light of GNM Inc's allegation that the purported merger was "done without any formal documents." [DE:119]. GNM Inc. served its "answer" to Cirion's Second Request and, as to each of the 21 requests, responded either "None" or "Produced." GNM Inc. did not object to *any* of the individual requests; it merely represented that it had no responsive documents or had already responded fully via the few documents previously produced. [DE:137].

But during Mr. Vedeneev's deposition regarding the alleged *de facto* merger, Mr. Vedeneev repeatedly testified that GNM Inc. did have documents (and, in many instances, <u>extensive</u> documents) responsive to every single category of document request to which Plaintiff had responded "None." [DE:137-3].

As a result, Cirion moved for sanctions, detailing GNM Inc.'s discovery abuse and seeking terminal sanctions (the "Sanctions Motion"). [DE:137]. The district court required briefing of the Sanctions Motion. [DE:141]. The district court ordered GNM Inc. to provide a detailed report identifying documents responsive to the Second Request, stating when they were identified, when they would be produced, and why they had not yet been produced (the "Interim Sanctions Order"). *Id.*

GNM Inc. filed a "Notice of Compliance" with the Interim Sanctions Order. [DE:142]. It also moved to recuse the district court judge (the "Recusal Motion"). [DE:143]. The Recusal Motion accused the district court of "engaging in what can

only be described as bullying that Undersigned has never experienced in his life," "unfair treatment" of GNM Inc., "preferential treatment" of Cirion, and "pervasive bias." *Id.* The district court addressed the Recusal Motion at a hearing and denied that motion formally by order. [DE:147].

On the sanctions front, GNM Inc. engaged in repeated filings and represented at hearings via counsel that GNM Inc. had produced all documents ordered by the district court. [DE:142, DE:148, DE:154]. Each of those filings and representations were followed by Cirion demonstrating (and the district court concluding) that such representations were false. [DE:146, DE:149, DE:153, DE:159]. The district court expressly ruled that GNM Inc. "violated the Federal Rules of Civil Procedure and the Court's orders dated December 28, 2024 and January 13, 2025 ... by failing to produce all documents responsive to" the Second Request. [DE:160]. After additional discovery, briefing, and argument, the district court sanctioned GNM Inc. via an award of attorneys' fees to Cirion for GNM Inc.'s blatant and repeated discovery misconduct and violation of court orders. *Id.*

**(5) GNM Inc.'s Motion for Reconsideration**

Meanwhile, GNM Inc. moved for reconsideration of the denial of the Second Substitution Motion (the "Reconsideration Motion"). [DE:152]. Asserting that the district court had committed "manifest errors of law or fact," GNM Inc. insisted that "clearly, here we have a clear error of law in interpreting Rule 17, and that created manifest injustice." [DE:152:5]. Reversing course, GNM Inc. now argued that "[t]he

Court should allow [GNM Ltd.] to continue to maintain its lawsuit, or alternatively simply join [GNM Ltd.] along with [GNM Inc.]" [DE:152:9].

Cirion's response argued that the Reconsideration Motion was simply an attempt to obviate GNM Inc.'s sanctioned discovery violations, under the theory that if GNM Ltd. were given plaintiff status then discovery into GNM Inc.'s status would be moot. [DE:162:12]. Cirion further pointed out that GNM Inc. never argued for the application of BVI law, nor sought a hearing on the issue; rather, GNM Ltd. sought to substitute GNM Inc. as plaintiff via Rule 25(c), without making the requisite showing under the rule (unilaterally adding GNM Inc. in the Operative Complaint). [DE:162]. The district court denied reconsideration. [DE:168].

**(6) The Summary Judgment Order**

The district court gave GNM Inc. yet another reprieve, permitting it to continue its claims despite its discovery violations. [DE:179]. Cirion filed a summary judgment motion that raised arguments regarding the nature of a bailment claim and GNM Inc.'s lack of standing to assert that claim, as well as a lack of damages in the case flowing to GNM Inc. (the "Updated Cirion MSJ") [DE:187]. GNM Inc., too, filed for summary judgment, seeking to prevail on its substantive claims (the "Second GNM MSJ"). [DE:184].

On June 18, 2025, GNM Inc. filed an "Expedited Motion: Motion for Clarification and to Affirm the Prior Stipulation of the Parties as to Summary Judgment" (the "Expedited Motion"), seeking to preclude Cirion from raising certain issues on summary judgment. [DE:180]. GNM Inc. argued that the parties'

joint scheduling report identifying "pending motions" indicated that Cirion "expected" that it "may" file a second summary judgment motion relating to the issue of GNM Inc.'s status as a plaintiff. *Id.* GNM Inc. claimed that the report was a "stipulation" precluding Cirion from seeking summary judgment on any other grounds. *Id.* But Cirion never agreed to limit its filings and the district court did not enter an order limiting summary judgment motions. The district court denied the Expedited Motion. [DE:181] ("The Court has not limited the scope of summary judgment nor ratified any purported stipulation between the parties regarding summary judgment").

The district court *sua sponte* sought supplemental briefing on the cross summary judgment motions (the "Supplemental Order"). [DE:202]. The Supplemental Order instructed each party to file a supplemental brief addressing legal authority contained in the order so as to answer a question: "Whether Defendant is entitled to judgment as a matter of law on Plaintiff's claim for implied bailment in light of the undisputed fact that the memory cards and servers at issue were not owned by Plaintiff." *Id.*

Cirion's Updated MSJ had raised GNM Inc.'s undisputed lack of ownership of the Memory to argue that GNM Inc. had no damages. But now Cirion responded to the Supplemental Order with supplemental briefing in support of its Updated Cirion MSJ (the "Cirion Supplement"), which: (a) confirmed that the cases cited in the Supplemental Order held that property ownership is a *sine qua non* of bailment under Florida law; and (b) provided additional authority for that proposition. [DE:204].

On the other hand, the district court noted that GNM Inc.'s submission (the "GNM Inc. Supplement") [DE:203], failed to "squarely address the issue presented by the Court," "affirmatively mischaracterize[d] its own allegations," "plainly admitted that it did not own the items that were at issue in this case," and "attempt[ed] to inject an entirely new theory into the case" of "equitable subrogation," without ever explaining "why it failed to assert this basis in *any* of the four Complaints filed in this action" (the "Omnibus Order"). [DE:210] (granting Cirion's Updated MSJ and denying GNM's Second MSJ) (original emphasis).

The district's court's Omnibus Order detailed how GNM's Second MSJ failed to comply with the district's Local Rules and noted that "although the violation of the Local Rules alone warrant striking Plaintiffs [Statement of Material Fact]" or some other sanctions," the Court nonetheless would resolve the matter on the merits. [DE:210:4]. Merits resolution was possible because "a critical fact necessary for the Court's resolution of the parties' cross-Motions for Summary Judgment is undisputed." [DE:210:4].

The Omnibus Order found no dispute that GNM Inc. did not own the Memory, citing GNM Inc.'s deposition testimony, interrogatory responses, and supplemental brief (*e.g.,* "yes, Plaintiff did not own the [missing memory] chips"). [DE:210:12]. And GNM Inc.'s claim that "Plaintiff was equitably subrogated in place of [the true owner of the Memory] Telegram Messenger," was found to "fl[y] in the face of Plaintiff's own pleadings." *Id.* Worse still, the GNM, Inc. Supplement asserted that GNM Inc. "never claimed that it owned the [missing] Memory Chips." [DE:203:2]. The district court pointedly noted "[t]his statement is false. Each of the Complaints

filed in this action, including the *verified* Amended Complaint, expressly allege the contrary." [DE:210:13 (original emphasis)].

The district court then addressed GNM Inc.'s equitable subrogation argument, noting that GNM Inc. failed to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." [DE:210:14 (citing *Coon v. Georgia Pac. Corp.*, 829 F.2d 1563, 1569 (11th Cir. 1987)]. Indeed, the district court found it "telling that Plaintiff has not mentioned the doctrine of equitable subrogation in the nearly *five years* that this action has been pending." [DE:210:14] (original emphasis). Beyond the impropriety of GNM Inc.'s attempt to assert a new theory into the case contrary to its own allegations without giving Cirion adequate notice, the district court "question[ed] the applicability of the doctrine in light of Plaintiff's admission that it had no duty to replace the missing memory cards and would be exposed to no legal liability for failing to do so." [DE:210:14 n.3].

Finally, the district court rejected GNM Inc.'s request to reopen discovery. [DE:210]. The Omnibus Order emphasized that a prior "reopening" of discovery was necessitated by GNM Inc. being added as plaintiff after GNM Ltd.'s undisclosed dissolution: GNM Ltd. "was dissolved on the 9th day of September 2020," a fact that GNM Ltd. "did not disclose to the Eleventh Circuit during its earlier appeal in this action" despite this Court having "issued a 'Jurisdictional Question' which expressly required the parties" to discuss the nature and status of the (dissolved) GNM Ltd." [DE:210:16].

## III. STATEMENT OF THE STANDARD OF REVIEW.

This Court "review[s] a district court's grant of summary judgment de novo considering all the facts and reasonable inferences in the light most favorable to the non-moving party." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). "A court should grant summary judgment when, after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." *Id.* (internal quotation marks removed). "For factual issues to be considered genuine, they must have a real basis in the record." *Id.* (internal quotation marks removed).

"[R]eview [of] denials of rehearing only" garner the "abuse of discretion" standard. *Kellogg v. Schreiber (In re Kellogg)*, 197 F.3d 1116, 1119 (11th Cir. 1999).

The district court's decisions in management of its own docket are reviewed for an abuse of discretion. *Young v. City of Palm Bay*, 358 F.3d 859, 863 (11th Cir. 2004). When the Court reviews a district court's decision under the abuse of discretion standard, its review is limited; and the Court "give[s] the [district] court considerably more leeway than if we were reviewing the decision de novo." *Id.* (internal quotation marks omitted). "The district court has a range of options; and so long as the district court does not commit a clear error in judgment, [the Court] will affirm the district court's decision." *Id.* at 863-64 (citing *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 665-66 (1978) ("Where a matter is committed to the discretion of a district court, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.' ").

## SUMMARY OF ARGUMENT

The district court was correct to grant summary judgment in favor of Cirion because both the facts and the law upon which that ruling was based are beyond dispute. The record was clear that GNM Inc. did not own the property that was subject to its sole claim for bailment, and Florida law is equally clear that a party cannot maintain an action for bailment as to property the party does not own. And GNM Inc.'s late-asserted claim of "equitable subrogation" cannot bridge that ownership gap, both because Florida law has never recognized the doctrine's applicability in the bailment context and because GNM Inc. cannot satisfy the criteria for equitable subrogation because it indisputably had no legal duty to replace the lost property.

Nor do any of GNM Inc.'s grievances regarding the procedural path of this case bear any relation to the reality of this litigation. For one, Cirion clearly never stipulated to limiting the arguments it could raise on summary judgment. And for another, the district court was guilty of no "cumulative error" for rejecting either GNM Inc.'s patently unfair and legally baseless waiver argument or its procedurally absurd Rule 17(a) argument. Those procedural arguments are, in any event, irrelevant attempts by Appellant to distract from the fundamental truth that this case properly ended based on the legally dispositive, undisputed fact that Appellant never owned the Memory.

The Court should affirm the district court's rulings in all respects.

## ARGUMENT

## I. THE DISTRICT COURT PROPERLY CONCLUDED THAT GNM INC.'S ADMITTED LACK OF OWNERSHIP OF THE MEMORY WAS FATAL TO THE BAILMENT CLAIM

### A. Bailment Requires Ownership, Not Mere Possession

Despite the preposterous procedural history of this case, it ended because of a single, clear, and specific rule of Florida law: the plaintiff in a bailment action must own the property that is the subject of the claim. GNM Inc. pleaded in the Operative Complaint that it owned the Memory, but discovery made clear it did not.

Indeed, GNM Inc. conceded below, *see* [DE:186:¶¶41-44] (citing deposition testimony), as it does on appeal, *see* IB:42, that it "does not own" the Memory that went missing, and, significantly, that it had no duty to replace the Memory or incur the cost for replacement *after* it went missing. Specifically, GNM Inc.'s CEO testified that GNM Inc. did not own the lost Memory:

> Q. So the memory cards that were stolen that we're here to discuss today were owned by Telegram Messenger?
>
> A. Of course.
>
> ...
>
> Q. As were the servers from which the memory was purportedly removed?
>
> A. Of course.

[DE:186-3:10]. Mr. Vedeneer further admitted that GNM Inc. owed no duty to pay the true owner for the loss:

> Q. So GNM did not have the obligation to pay for those memory cards?
>
> A. No.

[DE:186-3:46]. And GNM Inc.'s answer to the 19th interrogatory is just as clear. *See* DE:186-4 (confirming that GNM Inc. was *not* legally obligated to reimburse the owner of the Memory for any loss associated with the theft of the Memory). In short, there is no dispute whatsoever that GNM Inc. did not own the Memory and had no legal obligation to pay for a replacement.

While Cirion had raised GNM Inc.'s lack of ownership of the Memory in Cirion's Updated MSJ to argue that GNM voluntarily undertook its damages, the district court's Supplemental Order required the parties to address several cases standing for the more fundamental proposition that only the title owner of property can assert a bailment claim. And the cases cited in the Supplemental Order hold exactly that.

First, *Sirpal v. University of Miami*, 684 F. Supp. 2d 1349, 1364 (S.D. Fla. 2010), expressly held that plaintiff could sue in bailment only as to items he *personally owned* because "[a] key requirement of a bailment is that the bailor retain ownership of the property while transferring possession to the bailee." As such, the *Sirpal* court dismissed the bailment claim as to any materials plaintiff *did not actually own* – irrespective of whether plaintiff's possession of the material was lawful.

And in *Potts v. Budget Rent a Car System, Inc.*, 2005 WL 3057175, at *7-8 (N.D. Fla. Nov. 14, 2005), the district court held that a fundamental element of bailment was ownership of the property by the bailor. *Potts* involved a wrongful death claim in which plaintiff asserted a bailment claim against car-rental company Budget. The *Potts* court found that "the van was not owned by Budget; it was

purchased by PC Rentals and titled in its name." *Id.* "A contract of bailment is 'premised upon uninterrupted retention of title in the bailor." *Id.* (citing 8 C.J.S. Bailments §2). The Court's ruling could not have been clearer: because Budget never held legal title to the vehicle, it was "incapable as a matter of law of entering into a bailment contract with Plaintiff." *Potts*, 2005 WL 3057175 at *7-8 (emphasis added).[2]

*Fagan v. Central Bank of Cyprus*, 2021 WL 2845034, at *15-16 (S.D. Fla. Jun. 28, 2021) considered a plaintiff seeking default judgment on a bailment claim arising from an alleged "advance fee" scheme. Plaintiff had advanced money in exchange for promised lines of credit, and when defendants failed to perform, plaintiff claimed that the advances were subject to bailment and must be returned. The court rejected plaintiff's bailment claim, emphasizing that bailment requires delivery of property to the bailee coupled with *retention of ownership* by the bailor:

> A key component of a bailment contract is that the bailor gives up possession of the property to the bailee, but not title. The contracts as described, do not indicate that Plaintiff retained title of the $13.68 million.

*Id.* at *16. Because the advance fees were "non-refundable" unless defendants breached, plaintiff had relinquished title ownership to those funds. At most, plaintiff held a contractual right to repayment upon breach, which could support a claim for breach-of-contract but not bailment. The *Fagan* court denied judgment on the

[2]Appellant tries to distinguish *Potts* because plaintiff "had neither title nor possession of the van." IB:43. But *Potts* did not focus on possession. Rather, the court made clear that a bailor must be a title holder, such that Budget's lack of title ownership was dispositive. *Id.*

bailment count because a mere contractual expectation of repayment could not substitute for *title ownership* in the bailment context.

And in *Emerson v. Lambert*, 374 So. 3d 756, 758 (Fla. 2023), the Florida Supreme Court considered whether a "bailee" could be held vicariously liable for a car accident under Florida's dangerous-instrumentality doctrine, which imposes liability on a vehicle's titleholder who entrusts it to another. That is, should liability extend to a family member who had only temporary possession of the vehicle but did not hold title? In answering "no," the court reaffirmed that "[v]icarious liability under the dangerous instrumentality doctrine will generally flow from legal title." *Emerson*, 374 So. 3d at 764-65. Only title ownership provides the enduring dominion that justifies liability. *Id.* at 766. The court's reasoning extends beyond the dangerous-instrumentality context because it draws a sharp distinction between mere lawful possession and title ownership; the court emphasized that possession alone is insufficient to support legal doctrines (like bailment) that require the element of ownership.

Beyond the cases identified by the district court, Cirion cited additional authority for that proposition. *See* [DE:204]. For example, in *Chubb Seguros Chile S.A. v. Freight Logistics Int'l LLC*, 588 F. Supp. 3d 1312 (S.D. Fla. 2022), the court restated the Florida law that "[b]ailment, therefore, 'requires an owner of the object (the bailor) and the possessor (the bailee).' " *Id.* at 1318 (citing *Meeks ex rel. Estate of Meeks v. Fla. Power & Light Co.*, 816 So. 2d 1125, 1129 n.4 (Fla. 5th DCA 2002). And in *Coventry First LLC v. Jerome Golden Irrev. Ins. Trust*, 2010 WL 11597584 (S.D. Fla. Feb. 8, 2010), the court denied a defendant trust's motion for leave to file

a bailment counterclaim based on the plaintiff's alleged mishandling of a life insurance policy. The court held that a defining feature of bailment in Florida is that "the legal ownership of the goods or personal property does not change." *Coventry*, 2010 WL 11597584, at *3. The proposed counterclaim failed because the trust did not allege, *inter alia*, that it maintained legal ownership of the policy during the rescission period. The defendant's inability to allege ownership of the property during the relevant period doomed its counterclaim, because only an owner may sue for bailment.

Remarkably, while GNM Inc. accuses the district court of "extremely faulty legal thinking," it does not bother to *even mention Sirpal*, *Fagan*, *Emerson*, or *Coventry*. *See* IB:41. But all *six cases* cited by the district court and/or Cirion make clear that the requirement of title ownership in a bailment claim is not just something that "the District Court seems to believe," *id.*, but, rather, is a clear and repeatedly recognized requirement of Florida law. Essentially ignoring all that clear legal authority, Appellant instead argues that all that is required to maintain a bailment claim is mere legal possession of the property. IB:41. But no case cited by Appellant actually says that.

For example, GNM Inc.'s reliance on *Meeks* (*e.g.,* IB:45-46) is an instance of calling in an airstrike on your own position. In *Meeks*, the alleged bailor, Bellsouth, was expressly acknowledged to be the "owner of the pole" at issue. 816 So. 2d at 1130. And, notably, BellSouth had initially argued that it abandoned the pole and that "[b]y operation of law, the abandonment created a 'bailment' of the poles, with

FP&L assuming the legal status of 'bailee.' *Id.*" But the *Meeks* court noted that such a position "was ill-conceived" because, as that court explained,

> By definition, the two concepts cannot co-exist. *See Kitchen v. Wachovia Bank & Trust Co., N.A.*, 44 N.C. App. 332, 260 S.E.2d 772, 774 (1979) ("Defendant's attempt to create a gratuitous bailment out of an alleged abandonment by plaintiff is somewhat of a non sequitur. It is correct that personal property may be abandoned. But as a result of abandonment, ownership of personalty is lost; the former owner of the property is divested of title to the property.") (citation omitted). Abandonment is a relinquishment of the owner's legal right to a thing ... Bailment, on the other hand, requires an owner of the object (the bailor) and the possessor (the bailee).

*Meeks*, 816 So. 2d at 1129 n.4 (emphasis added). Thus, had the pole been abandoned, Bellsouth would have lost title to it and, therefore, been ineligible to sue for bailment.

GNM Inc.'s citation to *Armored Car Serv., Inc. v. First Nat'l Bank of Miami*, 114 So. 2d 431 (Fla. 3d DCA 1959), is similarly inapposite because "Armored Car Service [the alleged bailor] had reimbursed the school and had succeeded to the school's rights to maintain an action for recovery of the money and, therefore, no question was raised as to the right and propriety of the appearance of the Armored Car Service as the plaintiff in this case." *Id.* at 434. Likewise, *Atlantic Coast Line R. Co. v. Partridge*, 58 Fla. 153, 158-59 (Fla. 1909), gets GNM Inc. nowhere. For one, it appears that the defendant in *Partridge* never "raise[ed] such question of ownership and the plaintiff's right to maintain the action." *Id.* But, irrespective, the point of the opinion is that the *bailee* "may maintain an action for the recovery" of

"the goods of another" (*i.e.,* goods owned by the bailor). *Id.* **Cirion's** right to sue someone else (in its capacity as alleged **bailee**) is not at issue here, and "goods of another" certainly implies the obligation of ownership by the **bailor**. Lastly, *Florida East Coast Ry. Co. v. Peters*, 72 Fla. 311 (Fla. 1916) is of no moment; it involved a claim by a consignee against a common carrier, not for bailment.

And perhaps Appellant ignored *Sirpal* precisely because it *expressly distinguished* between lawful possession and title ownership in holding that only the latter will support bailment. Indeed, the property at issue in *Sirpal* was the plaintiff's own scientific research, to which he had an obvious legal right of possession. *Sirpal,* 684 F. Supp. 2d at 1364. But by virtue of his contract with the defendant University of Miami, Sirpal did not *own* his scientific discovery; the University did. The *Sirpal* court literally distinguished between the physical binders and devices in which the research was stored (which Sirpal *did* own) and the research found *within* those media (which, by contrast, the University owned). The bailment claim could seek recovery for the former but not the latter. *Id.* As the *Sirpal* court explained, "bailment 'requires an owner of the object (the bailor) and the possessor (the bailee).' " *Id.* (citing *Meeks*, 816 So. 2d at 1129 n.4). Owner means owner.

Because the record is clear that Appellant did not own the Memory, based on all the foregoing authority, Cirion was entitled to judgment as a matter of law on GNM Inc.'s bailment claim.

### B. GNM Inc. Cannot Establish Ownership Via a Novation Argument

Unable to argue that it is the *owner* of the Memory, Appellant instead asserts that it acquired sufficient to rights to satisfy the ownership element by virtue of a "novation" agreement with the Memory's actual owner, Telegram Corp. *See* IB:46. In addition to being wrong, as will be shown, that argument is raised for the first time on appeal and for that reason should be rejected. *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994).

Indeed, GNM Inc.'s "novation" theory was not the basis for the GNM Inc. Supplement, which used the word "novation" exactly once in six pages. Rather, GNM Inc. merely argued that "there were several Novation Agreements, transferring *the service contract* from Telegram to Plaintiff…" and, "[a]s such, it is clear that Plaintiff made the payment to protect his own business interest with Telegram." [DE:203:5]. Indeed, GNM Inc. only mentioned the Telegram novation in the context of Mr. Vedeneev's testimony that "Telegram Messenger, our client, lost their memory cards, and GNM, in order to cover for that, bought at their own expense, at their own expense the memory cards and installed them." *Id.* All of that is a far cry from Appellant's stunning assertion today that "what was once owned by Telegram Messenger is now owned by Global Network Management." IB:19. There is zero support in the record for that bald assertion, and it is not true. GNM Inc. never "owned" the Memory, either by virtue of a novation or otherwise.

So while GNM Inc. may have had the right to *possess* the Memory (*e.g.,* by virtue of novation), that is irrelevant. Again, Florida law is clear that mere possession – lawful or not – is insufficient for purposes of bailment. *See, e.g., Sirpal*, 684 F. Supp. 2d at 1364. And because possession is the best GNM Inc. can hope to accomplish with its novation theory, the fact that the theory is raised for the first time on appeal is the least of Appellant's problems. Again, the district court was correct to grant summary judgment based on GNM Inc.'s undisputed lack of title ownership of the Memory.

### C. GNM Inc. Cannot Use "Equitable Subrogation" to Prove Ownership in the Context of Bailment

None of the foregoing was lost on GNM Inc., so faced with the fact that it did not own the Memory, GNM Inc. turned to "equitable subrogation" in its Supplemental Response. [DE:203]. But that last-gasp argument suffers from fatal defects both procedural and substantive.

#### (1) GNM Inc. Raised Equitable Subrogation Too Late

Procedurally, the record is clear that GNM Inc. did not raise equitable subrogation until the last minute, in response to the post-summary-judgment-briefing Supplemental Order. First, GNM Inc. never pleaded subrogation, either to affirmatively satisfy the ownership element of its bailment claim or defensively as an avoidance to Cirion's eighth affirmative defense on the issue of ownership. *See Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1012 (11th Cir. 1982) ("Fed. R. Civ. P. 8(c) requires that '(i)n pleading to a preceding pleading, a party shall set

forth affirmatively ... any other matter constituting an avoidance or affirmative defense.'"). In short, GNM Inc. never pleaded equitable subrogation anywhere, and therefore Defendant was never given fair notice that the concept was at issue.

Second, GNM Inc. never raised equitable subrogation in its summary judgment briefing either. Cirion sought summary judgment because GNM Inc. did not own the Memory and had no duty to pay $713,460 to replace it. *See* [DE:186:7-8]. GNM Inc.'s Summary Judgment Response did not refute that, but rather argued: (1) mitigation "is a question for the jury;" and (2) GNM Inc. had an *implied* obligation to pay for the Memory that somehow arose out of its general duty to maintain Telegrams's equipment. *See* [DE:190:8-9]. "Equitable subrogation" never came up.

As such, GNM Inc. repeatedly failed to assert equitable subrogation when it should have been raised. As the Omnibus Order notes, the Federal Rules of Civil Procedure "require that pleadings 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " [DE:210:14] (citing *Coon,* 829 F.2d at 1569). And "it is well settled that parties may not assert unpled theories of relief on summary judgment." [DE:210:15] (citing *Spliethhoff Bevrachtingskantoor B.V. v. United Yacht Transport, LLC*, 2022 WL 17067798 at *1 (S.D. Fla. 2022), and *Gilmore v. Gates, McDonald & Co.*, 382 F. 3d 1312, 1215 (11th Cir. 2004) ("a plaintiff may not amend [its] complaint through argument in a brief opposing summary judgment.")). *See also, Rodriguez v. Geovera Specialty Ins. Co.*, 426 F. Supp. 3d 1318, 1330 (S.D. Fla. 2019) (when defendant waived

affirmative defense by failing to allege it in his answer, he cannot revive the defense in a summary judgment filing).

GNM Inc. neither addresses any of those opinions nor cites any contrary federal authority.[3] In short, GNM Inc. waived any equitable subrogation argument by failing to give Cirion even a *hint* that it was an issue in this case, much less the requisite "fair notice" of it. *Coon*, 829 F.2d at 1569.

**(2) Equitable Subrogation Does Not Apply to Volunteers**

But even if GNM Inc. had not well and truly waived this argument by not bringing it up once in the *five years* this case has been pending, equitable subrogation still would not apply. To begin, none of GNM Inc.'s legal authority deals with a bailment claim, and thus Appellant provides *no authority* for using equitable subrogation to satisfy the element of title ownership in a bailment claim. That said, GNM Inc.'s mortgage, insurance, and personal injury cases all make clear that the doctrine only applies where the party asserting it had the <u>legal duty</u> to pay for the loss in question – something GNM Inc. admittedly lacks. *See* [DE:186:¶¶41-44].

Equitable subrogation does not protect a party that had no legal obligation to pay for the initial loss. *See, e.g., Underwriters at Lloyds v. City of Lauderdale Lakes*, 382 So. 2d 702, 704 (Fla. 1980) (equitable subrogation "was designed to afford relief where one <u>is required to</u> pay a legal obligation which ought to have been met ... by

[3] Instead, GNM Inc. mentions only Florida state cases, IB:10-12, which do not speak to the pertinent *federal* standard for pleading. *See, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007) (describing a plaintiff's obligation under Rule 8(a)(2) to "provid[e] not only 'fair notice' of the nature of the claim, but also 'grounds' upon which the claim rests."). *See* [DE:210:14].

another."); *Dantzler Lumber & Export Co. v. Columbia Cas. Co.*, 156 So. 116, 120 (Fla. 1934) ("One who had indemnified another in pursuance of his legal obligation to do so succeeds to, and is entitled to, a cession of all the means of redress held by the party indemnified against the party who has occasioned the loss"); *Cleary Bros. Const. v. Upper Keys Marine Const. Inc.*, 526 So. 2d 116, 116 (Fla. 3d DCA 1988) (same); *Eastern Nat'l Bank v. Glendale Fed. Sav. And Loan Ass'n*, 508 So. 2d 1323, 1324 (Fla. 3d DCA 1987) ("The doctrine of equitable subrogation does not apply to mere volunteers.").

Here, GNM Inc. *says* that "it is clear that Plaintiff made the payment to protect his own business interest with Telegram, did not do it voluntarily, [and] clearly was not primarily liable for the debt…." IB:8 (emphasis added). But that rhetoric flies in the face of GNM Inc.'s repeated admission that it had *no legal duty* to replace the Memory. [DE:186:¶¶41-44] ("Q. So GNM did not have the obligation to pay for those memory cards? A. No."; Q: "Was GNM legally obligated to reimburse the owner of the Memory for any loss associated with the theft of the Memory?" A: "No.").

In fact GNM Inc. voluntarily paid for the Memory to "protect [its] own business interest with Telegram." [DE:203:5-6]. And as a matter of clear Florida law, because GNM Inc. lacked the *legal duty* to make that payment, equitable subrogation cannot apply.

Finally, GNM Inc. briefly argues that "[w]hether the subrogation was done voluntarily, or at all, is not a question for a Court, but a question for a jury." IB:49. But GNM Inc.'s lack of obligation to pay for the Memory *is not in dispute*. Again,

GNM Inc. expressly testified that it owed no legal duty to pay for the lost Memory. *See* [DE:186:¶¶41-44]. So while GNM Inc. blithely dissembles that it "had to pay for those chips," IB:8, and "did not do it voluntarily," IB:12, the clear and undisputed record directly belies those assertions. In fact, GNM Inc. was a classic volunteer; it had no legal duty to pay for the Memory, but rather undertook that payment to preserve its relationship with its customer. [DE:203:5-6].

In sum, GNM Inc. was not the title owner of the Memory, and thus cannot bring a claim for bailment under clear Florida law. *Sirpal,* 684 F. Supp. 2d at 1364. And GNM Inc. never gave Cirion fair notice that the doctrine of equitable estoppel would be asserted to plug the ownership gap in this bailment claim, so GNM Inc. waived that argument. *Coon*, 829 F.2d at 1569. Irrespective, no Florida case has ever allowed equitable subrogation to stand in for the requirement of title ownership in a bailment claim. And, either way, one who voluntarily undertakes a payment – as GNM Inc. clearly did here – cannot satisfy the elements of equitable estoppel. *Underwriters at Lloyds*, 382 So. 2d at 704. The district court committed no error when it granted summary judgment in Cirion's favor.

## II. THERE WAS NO STIPULATION PRECLUDING CIRION FROM FILING ITS MOTION FOR SUMMARY JUDGMENT

Next, GNM Inc. argues that Cirion was precluded from even *raising* the ownership issue via summary judgment by virtue of a purported "stipulation" in the form of the November 12, 2024 Joint Scheduling Report (the "Report"). [DE:129]. GNM Inc. previously raised that issue below its June 18, 2025 "Expedited Motion: Motion for Clarification and to Affirm the Prior Stipulation of the Parties as to

Summary Judgment." [DE:180]. The district court disagreed: "[t]he Court has not limited the scope of summary judgment nor ratified any purported stipulation between the parties regarding summary judgment." [DE:181]. There was nothing remotely improper about that ruling.

As an initial matter, the district court's decision to permit Cirion's Updated MSJ is a garden-variety docket management issue left to the district court's discretion and is therefore reviewed under an abuse-of-discretion standard. *Young*, 358 F.3d at 863-64 (reviewing district court's decision on whether to permit a motion for summary judgment for an abuse of discretion). GNM Inc. does not even *attempt* to show that the district court's decision was an abuse of that discretion.

Rather, GNM Inc. argues that the district court's ruling "disregards the reasonable interpretation of the parties' procedural filings, particularly in light of Defendant's full knowledge and procedural advantage." IB:56. But as detailed below, there is nothing "reasonable" about Appellant's "interpretation" of the Report. Equally obviously, Cirion obtained no "procedural advantage" by a ruling permitting *both parties* to seek summary judgment—which GNM Inc. did. *See* [DE:184]. And of course, the dispositive issue ultimately arose upon the *district court's sua sponte* Supplemental Order.

But to take this argument head on, the "stipulation" Appellant is so desperate to enforce is nothing more than Cirion's comment responding to the district court's request for a list of <u>pending</u> motions. *See* [DE:129]. The Report did not require the parties to make a binding commitment regarding their future plans and they did not do so. Here's the actual text:

> A list of all pending motions, whether each motion is "ripe" for review, the date each motion became ripe, and a summary of the parties' respective positions with respect to each ripe motion:
>
> There are currently no pending motions. That said, Defendant expects that it may file a second motion for summary judgment upon completion of outstanding discovery related to whether Plaintiff is the proper corporate successor to Global Network Management, Ltd.

[DE:129]. As the district court correctly determined, that is no binding "stipulation."

For one thing, the statement was not required, but rather was merely an attempt by Cirion to provide additional information. For another, Cirion only stated what it "expects" that it "may" do in the future; it plainly made no commitment. Moreover, even within the realm of its "expectations," Cirion never indicated that it would *only* seek summary judgment on the successor issue, but rather (accurately) predicted a summary judgment motion raising the (then front-and-center) successor-in-interest issue. In sum, GNM Inc. improperly attempts to convert a voluntary, passing comment about certain of Ciron's future expectations into a binding stipulation to limit Cirion's (or the district court's) right to raise summary judgment issues that had never been decided.

The language at issue is a far cry from the *actual, express stipulations* at issue in the cases Appellant cites, none of which looks anything this language. *See Hill v. Nelson*, 676 F.2d 1371, 1373 (11th Cir. 1982) (enforcing an express agreement whereby the "parties stipulated that the sum of $5,000 was paid to plaintiff ... and that this sum will be deducted from any verdict"); *Esch v. Forster*, 123 Fla. 905 (Fla. 1936) (enforcing a clear, detailed, and undisputed stipulation read into the record during trial and included within the resulting judgment regarding entitlement to

payments that was made to "prescribe the issues on which the case is to be tried" and acted on by the Court); *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1365 (11th Cir. 2006) (upholding a written stipulation to replace one defendant with another that clearly stated "service of process made on the original Defendants is proper and binding on the [new] Defendant" and finding that, by that express agreement, the new defendant "waived the issue of personal jurisdiction.") And in *Freeman v. NIBCO, Inc.*, 626 F. Supp. 3d 1112, 1122 (N.D. Ala. 2020), the court *refused* to enforce an *express* stipulation in joint status reports that certain claims and parties were not proceeding because the stipulations were made early in the case, were outside of the pleadings, and the reversal came as no "surprise" to defendant – all to "prevent[]manifest injustice."[4]

In sum, the district court acted well within its discretion in ruling that there was no limit to the issues Cirion could raise on summary judgment. That is especially true given that the Court never ruled on the parties' initial summary judgment motions. So, far from being a "reasonable interpretation of the parties' procedural filings," Appellant's spin on Cirion's gratuitous, non-specific, subjunctive, and non-

[4] The balance of Appellants' non-binding, Georgia state-court authority is equally inapposite. *See Thompson v. Thomspon*, 237 Ga. 509 (Ga. 1976) (rejecting stipulation in marital proceeding where credible allegations of fraud and duress required an evidentiary hearing); *McDaniel v. Oliver*, 172 Ga. App. 109, 110 (Ga. Ct. App. 1984) (upholding a stipulation to limit damages that "clearly set forth the terms to which the parties agreed" because, in the absence of allegations of fraud or duress or any effort to "withdraw or repudiate" the stipulation, "a party may stipulate away his entitlement" to damages).

binding indication of its future expectations is a cynical and ultimately pointless attempt to avoid a dispositive legal issue raised by the district court itself. IB:16.

## III. GNM INC. WAS NOT PREJUDICED BY ANY "CUMULATIVE ERROR"

Finally, Appellant sets forth an airing of grievances that it claims have made it a victim of the district court's "cumulative error" in this case. IB:16. Of course, as detailed above and below, it has always been GNM Inc.'s own outrageous conduct in this litigation that has been the cause of the rulings it now decries. And, either way, none of those procedural issues wase dispositive.

### A. Cirion Did not Waive Its Proper Party Argument

GNM Ltd. filed this lawsuit in January 2000, dissolved itself in September 2000, failed to disclose that at the time, or in response to this Court's jurisdictional questions in March and May, 2002, or when Cirion filed its notification of a change in its own corporate ownership in October 2023, or in its Statement of Material Facts in December 2023. Instead, Cirion uncovered GNM Ltd.'s dissolution for the first time in GNM Inc.'s *November 2023* deposition, four months after Cirion filed its answer and mere weeks before the summary judgment deadline. Yet despite that truly remarkable timeline, GNM Inc. has never ceased to be *incensed* that the district court permitted Cirion to raise the issue of GNM Inc.'s status as a proper party in its Updated MSJ. The *chutzpah* is truly breathtaking.

As an initial matter, again, the district court's determination that Cirion did not waive the right to assert GNM Inc.'s undisclosed dissolution is subject to the

abuse of discretion standard. *See Young*, 358 F.3d at 863-64. Again, Appellant it does not even *attempt* to demonstrate that the district court abused that discretion.

And the district court has *repeatedly* rejected the argument that Cirion waived its right to address GNM's undisclosed corporate shenanigans, starting with the March 12, 2024 hearing in which the issue was first argued, in striking [DE:94] GNM Inc.'s "Motion to Deem Defendant's Standing Argument Waived. " [DE:89], and in the district court's concise statement of why no waiver occurred in its Substitution Order:

> LATAM could not dispute Global Ltd.'s capacity to sue in its Answer and Affirmative Defenses because it had no basis to do so. The first time that LATAM received notice that Global Ltd. no longer existed was in October 2023 during Mr. Vedeneev's deposition. Shortly thereafter, LATAM filed its Motion for Summary Judgment in which it challenged Global Ltd.'s ability to prosecute this action given that it "no longer exists." ECF No. [67] at 17. Further, it was not until May 2024 that Global Ltd. filed its Certificate of Dissolution. ECF No. [102-1]. Under these circumstances, the issue whether Global Ltd. has the legal capacity to maintain this action was not waived. *Compare Jackson-Shaw Co. v. Jacksonville Aviation Authority*, 510 F. Supp. 2d [at 691] (defendant waived right to challenge plaintiff's capacity to sue "by not raising this issue in either its affirmative defenses, dispositive motions, or pre-trial statement…") (citations omitted).

[DE:103:9 n.5]. As the district court repeatedly held, Cirion raised the issue at its first opportunity.

Further, GNM Inc. first raised its waiver argument in its opposition to Cirion's MSJ. In Cirion's ensuing reply, Cirion argued that the issue had not been waived for all the above-mentioned reasons. But Cirion also <u>explicitly</u> requested leave to amend to assert defenses based on GNM Ltd.'s dissolution if necessary:

> [I]f the Court believes that this issue must be raised as an affirmative defense, then Defendant hereby requests leave to amend to assert that defense. Such an amendment would not prejudice GNM (it already has all relevant information), LATAM has not abused its right to amend (never having done so), and the defense is plainly meritorious (typically, plaintiffs have to *actually exist* and *actually own their claims*). *See Thompson v. Branch Banking & Tr. Co.*, 2020 WL 1976246, at *1 (S.D. Fla. Apr. 24, 2020) (factors to consider in "motion for leave to amend includ[e] undue delay, bad faith or dilatory motive ... repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."). Given LATAM just came to learn of an issue that Plaintiff really should have disclosed earlier, if leave to amend is even necessary then it should be permitted.

[DE:77:3-4]. So when Appellant states that "Defendant never filed any motion for leave to amend the affirmative defense" it is not being forthcoming with this Court. IB:17.

So irrespective of whether this issue *could be waived,* plainly Cirion did not waive it here. Rather, Cirion brought the issue to the district court's attention immediately and even sought leave to amend in a contemporaneous filing if the district court deemed that necessary. But the district court did not deem it necessary, and instead dealt with the undisclosed dissolution of GNM Ltd. as detailed herein.

Of course, ultimately the case ended not on the basis of whether GNM Ltd. or GNM Inc. was the proper party, but rather because *neither entity* owned the Memory. So, as Appellant itself notes, "summary judgment was granted on other grounds and had nothing to do with" this issue. IB:56-57. Irrespective, Appellant suggests that

the district court should have just ignored the whole matter of GNM Ltd.'s concealment of its dissolution and assignment of the claim and just given GNM Inc. "[its] trial." IB:57. Basically, Appellant argues that it should have been permitted to hide such a significant fact from defendant and the court, but that when the fact was unearthed, defendant should be found to have waived the right to complain about it and the district should have simply ignored it. More chutzpah. There is no error here.

**B. GNM Inc.'s Reliance on Rule 17(a) Is Baseless**

Next, GNM briefly complains (in Section III) of "denying a motion to comply with Federal Rule of Civil Procedure 17(a)," noting that "Defendant has raised, as an issue, items related to Rule 17(a)." IB:59. It is not clear what "motion" was denied; no "Rule 17(a)" motion was filed below, and none is identified in the Initial Brief. Nor did Cirion ever "raise" Rule 17(a). Rather, *GNM Inc.* first raised that rule in its January 2025 *Reconsideration Motion* (the denial of which, [DE:168], GNM Inc. also appeals as discussed below). *See* [DE:152]. Irrespective, the district court did not violate Rule 17(a).

As detailed above, when the district court learned that GNM Ltd. did not exist and had assigned away this claim, it instructed GNM Ltd. to "file a memorandum or appropriate motion addressing its ability to continue prosecuting this action given the representation that the Plaintiff no longer exists and/or has otherwise been dissolved." *See* [DE:88]. From that point on, GNM Ltd. sought to substitute GNM Inc. as plaintiff. First, GNM Ltd. filed its "Motion to Deem Defendant's Standing Argument Waived, or Alternatively Motion for Leave to Substiute [sic] Global

Network Management, Ltd with Global Network Management, Inc." [DE:89]. And when that filing was stricken, GNM Ltd. returned with its Substitution Motion, arguing "[i]t is clear that Global Network Management Inc. has been assigned all of its interest from Global Network Management, Ltd." DE:93:4. The Substitution Motion was made under Rule 25(c), and it never sought to use *either* BVI *or* Florida law to permit GNM Ltd. to continue as plaintiff. The district court denied the Substitution Motion because Plaintiff failed to make a sufficient showing that GNM Inc. was the successor to GNM Ltd. [DE:103:6, 9-10]. But the district court *still* gave Appellant the opportunity to refile its complaint via *whichever entity it chose:* "leave to amend is appropriate so that the correct party plaintiff may prosecute the implied bailment claim at issue if it so chooses." [DE:103:10].

In response, Appellant filed first the Second Amended Complaint and then the Operative Complaint on behalf of GNM Inc., alleging GNM Inc. owned the claim. Appellant did *not* refile on behalf of GNM Ltd. based on the theory that it could pursue the claim post-dissolution under BVI law. And of course that theory would have been meaningless if Ltd. had assigned away the claim as it has alleged.

While Appellant seems to argue that Rule 17(a) prohibited the district court from dismissing the Amended Complaint (without prejudice), that rule is utterly inapposite here. Rule 17(a) does preclude dismissal "until ... the real party in interest" has been given "a reasonable time" to "ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). But here, GNM Inc. plainly *was* given sufficient time to seek joinder or substitution. The Substitution Order addressed GNM Inc.'s motion to do just that, and was only denied because GNM Inc. failed to meet its

burden under Federal Rule of Civil Procedure 25(c). Irrespective, even then the district court then gave that purported "real party in interest" *another* chance to join the action by letting GNM Inc. file its own complaint. Which it did.

Plainly Rule 17 does not preclude dismissal when: (1) dismissal comes only *after* the purported real party in interest has been given a chance to be substituted into the action; and (2) dismissal is without prejudice to allow that very same real party in interest to join the action via an amended complaint. And, GNM Inc. is the current plaintiff. How can GNM Inc. argue with a straight face that it has not been afforded "a reasonable time to ratify, join, or be substituted into the action?" *See* Rule 17(a).

Finally, as Appellant itself points out, "the primary purpose of the Rule is to *protect the Defendant* against a subsequent action." IB:59 (citing *RK Co. v. See*, 622 F.3d 846, 850 (7th Cir 2010) (emphasis added)). Appellant cannot sanely complain that a rule designed to protect Cirion from being sued by GNM Inc. in a later action was violated when GNM Inc. was allowed to sue Cirion in this action. Irrespective, Appellant was given every opportunity to assert this claim on behalf of *whichever* entity it believed was the "real party in interest," GNM Ltd. or GNM Inc. Plainly the "real party in interest" was afforded "a reasonable time" to "ratify, join, or be substituted into this action." Rule 17(a) was not violated.

### C. Denial of the Reconsideration Motion Was Proper

Finally, Appellant claims that the district court's denial of the January 2025 Reconsideration Motion was error. In fact, that motion was nothing more than GNM

Inc.'s risibly transparent attempt to dodge impending discovery sanctions by reversing course and trying to make *GNM Ltd.* the plaintiff again. Stunningly, after trying for months to replace GNM Ltd. with GNM Inc., and then *succeeding* by filing the Operative Complaint expressly alleging that GNM Inc. owns the claim by virtue of a "de facto merger," GNM Inc.'s Reconsideration Motion argued that *GNM Ltd.* actually owned the claim and may assert it under the law of the BVI. [DE:152:9]. (arguing for the district court to "allow [GNM Ltd.] to continue to maintain its lawsuit, or alternatively simply join [GNM Ltd.]"). That motion was frivolous to the point of being sanctionable, and the district court was right to deny it. [DE:168].

As an initial matter, reconsideration is "an extraordinary remedy to be employed sparingly." *Ofer v. Roher*, 2025 WL 18648, *1 at *3 (S.D. Fla. Jan. 2, 2025). *See also*, *Su v. Local 568, Transp. Workers Union of Am., AFL-CIO*, 699 F. Supp. 3d 1333, 1336 (S.D. Fla. 2023) (same). Nonetheless, Appellant traveled under the argument that "here we have a clear error of law in interpreting Rule 17, and that created manifest injustice." [DE:168:5].

Appellant sought reconsideration of the district court's conclusion that GNM Ltd. never established that it had the right to continue this claim post-dissolution: "LTD provide[d] no legal authority that a dissolved BVI company has the power to maintain a lawsuit following dissolution." *Id.*[5] Thus GNM Inc. appears to find fault

[5]The Substitution Motion had never actually *argued* that GNM Ltd. could continue the claim post-dissolution under *any* law. That position was only mentioned (citing Florida law) in GNM Inc.'s opposition to Cirion's First MSJ. [DE:103:9].

with the district court's analysis regarding the option that Appellant *did not choose*, to wit, allowing GNM Ltd. to continue the action. Again, the whole point of the Substitution Motion was to allow *GNC Inc.* to step in as plaintiff.

In that sense, the Substitution Order's discussion of GNM Ltd. was *non-binding,* because that was not the relief Appellant's Rule 25(c) motion sought. But even as to that issue, the district court merely addressed whether GNM Ltd. could, based on the record, continue the action in its own name. And in so doing, the district court stated something that Appellant does not even dispute: "Global Ltd. provides no legal authority that a dissolved BVI company has the power to maintain a lawsuit following dissolution." [DE:103*:*9-10]. Presumably GNM Inc. did not provide that authority <u>because it was not seeking that relief</u>. Again, the Substitution Motion asserted that <u>GNM Inc.</u> owned the claim and was the right entity to pursue it.

And if Appellant wished to raise the issue of GNM Ltd.'s right to pursue the claim under BVI law then Appellant had the burden of mentioning that. A "party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing." *De Fernandez v. Seaboard Marine, Ltd.*, 2022 WL 2869730, *1 at *3 (S.D. Fla. July 21, 2022). But the district court was not "somehow obligated to do [a party's] job for them." *See A.L. v. Jackson Cnty. Sch. Bd.*, 635 Fed. Appx. 774, 787 (11th Cir. 2015) ("We agree with the district court that Appellants waived their claims by failing to brief them, failing to respond to the Board's motion for summary judgment, and failing to bring to the court's attention evidence that supported their claims."). Raising the issue was not Cirion's job and it was not the district court's job.

If GNM Ltd. wanted to continue as plaintiff, it was up to GNM Ltd. to choose that path and provide notice of its intent to rely on BVI law to do so. But it didn't, and so the nature and applicability of BVI law was never considered. That was no error by the district court. That was a strategic decision by GNM Inc., and a "decision to pursue a risky litigation tactic that in hindsight revealed itself to be imprudent does not amount to manifest injustice." *Schmidt v. Washington Newspaper Publ'g Co., LLC*, 2018 WL 6422705, *1 at *3 (S.D. Fla. Dec. 6, 2018).

Appellant cannot show any error in the district court's denial of the "extraordinary remedy" of reconsideration, as GNM Inc. plainly has not shown *any* error, much less one leading to "manifest injustice." *Ofer*, 2025 WL 18648, at *3.

In sum, there was no "cumulative error" here *at all*, much less any that mattered to the outcome. To the contrary, at every turn, what happened in this case was the result of Appellant's own utter disdain for the truth, the court system, and the laws and rules that govern it.

## CONCLUSION

The Court should affirm the Final Judgment in all respects.

Respectfully submitted,

Elliot B. Kula
Florida Bar No. 03794
KULA & ASSOCIATES, P.A.
12000 Biscayne Blvd., Ste. 221
Miami, Florida 33181
Telephone: (305) 354-3858
Facsimile: (305) 354-3822
eservice@kulalegal.com
elliot@kulalegal.com

By: /s/ Elliot B. Kula
Elliot B. Kula

Scott M. Dimond
Florida Bar No. 995762
DIMOND KAPLAN &
ROTHSTEIN, P.A.
2665 South Bayshore Drive, PH-2B
Miami, Florida 33133
Telephone: (305) 374-1920
Facsimile: (305) 374-1961
Sdimond@dkrpa.com

By: /s/ Scott M. Dimond
Scott M. Dimond

*Co-Counsel for Defendant/Appellee*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This brief uses Times New Roman 14-point typeface and contains 12,679 words.

/s/ **Elliot B. Kula**
Elliot B. Kula

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 24, 2026, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system. I also hereby certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ **Elliot B. Kula**
Elliot B. Kula