**CASE NO.: 25-13166**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

GLOBAL NETWORK MANAGEMENT, INC.
*Plaintiff-Appellant*

v.

CIRION TECHNOLOGIES SOLUTIONS, LLC, f/k/a Lumen Technologies, Inc., f/k/a CenturyLink Latin. American Solutions, LLC, f/k/a Level 3 Latin American Solutions, LLC,
*Defendant-Appellee*

Appeal from the United States District Court for the Southern District of Florida

**LOWER TRIBUNAL CASE NO.: 20-cv-20723-JB**

---

# REPLY BRIEF OF PLAINTIFF-APPELLANT

Law Offices of Andre G. Raikhelson, LLC.
7000 W Palmetto Park Road, Suite 1240
Boca Raton, Florida 33431
Tel. 954-895-5566
Fax. 954-951-0620
Primary: arlaw@raikhelsonlaw.com

/s/ Andre G. Raikhelson
Andre G. Raikhelson, Esq.
Bar Number: 123657

## TABLE OF CONTENTS


*TABLE OF CONTENTS* ........................................................................ i

*TABLE OF AUTHORITIES* ..................................................................... ii

*PREAMBLE: CITATION IRREGULARITIES IN CIRION'S BRIEF* ....1

*ARGUMENT* ............................................................................................ 3

I. The Novation Agreements Transferred Property Rights, Not Merely Contract Rights ...................................................... 3

II. Equitable Subrogation Need Not Be Pled Under Florida Law ......................................................................... 7

III. GNM Was Not a Volunteer ................................................................. 9

IV. The District Court Itself Recognized This Case Should Go to a Jury ............................................................. 11

*CONCLUSION* ......................................................................................... 13

*CERTIFICATE OF COMPLIANCE* ........................................................... 13

*CERTIFICATE OF SERVICE* ................................................................ 13

## TABLE OF AUTHORITIES

### Cases


*Armored Car Serv., Inc. v. First Nat'l Bank of Miami,*

114 So. 2d 431 (Fla. 3d DCA 1959) .......................................................... 5, 6

*Dade Cty. Sch. Bd. v. Radio Station WQBA,*

699 So. 2d 701 (Fla. 3d DCA 1997) .............................................................. 8

731 So. 2d 638 (Fla. 1999) ........................................................................... 8

*Eastern Nat'l Bank v. Glendale Fed. Sav. & Loan Ass'n,*

508 So. 2d 1323 (Fla. 3d DCA 1987) ...................................................... 9, 10

*Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938) ...................................... 8

*Glob. Network Mgmt., Ltd. v. CenturyLink Latin Am. Sols., LLC,*

67 F.4th 1312 (11th Cir. 2023) .................................................................. 4, 5

*Hart Properties, Inc. v. Slack,* 159 So. 2d 236 (Fla. 1963) ..................... 9

*Kala Invest., Inc. v. Sklar,* 538 So. 2d 909 (Fla. 3d DCA 1989) ............. 8

*Transp. Int'l Pool, Inc. v. Lyons,*

609 So. 2d 658 (Fla. 4th DCA 1992) ........................................................ 8, 9

*Sirpal v. University of Miami,*

684 F. Supp. 2d 1349 (S.D. Fla. 2010) ..................................................... 5, 6

*Underwriters at Lloyds v. City of Lauderdale Lakes,*

382 So. 2d 702 (Fla. 1980) ......................................................................... 10


### Rules


Fed. R. Civ. P. 56(f) ........................................................................... 11

## PREAMBLE:
## CITATION IRREGULARITIES IN CIRION'S ANSWER BRIEF

Before addressing the merits, Appellant directs the Court's attention to several citation irregularities in Cirion's Answer Brief. While Appellant does not suggest that Cirion's counsel intentionally fabricated authority, the volume and nature of these errors warrant disclosure, particularly in light of this Court's and the broader judiciary's heightened scrutiny of citation accuracy.

**1. Freeman v. NIBCO is miscited.** Cirion cites this case as "626 F. Supp. 3d 1112." [Cirion Br. at 39]. The correct citation is *526* F. Supp. 3d 1112 (N.D. Ala. 2020).

**2. Gilmour v. Gates, McDonald & Co. is misspelled and mispinpointed.** Cirion cites "*Gilmore v. Gates, McDonald & Co*." with a pinpoint to page "1215." The case is *Gilmour* v. Gates, McDonald & Co., 382 F.3d 1312 (11th Cir. 2004), and the operative discussion appears at page 1315. When invoking a forfeiture rule against an opponent, the least one can do is cite the case correctly.

**3. Rodriguez v. GeoVera is incorrectly reported.** Cirion's Table of Authorities lists this case at "426 F. Supp. 3d 13180." The correct citation is 426 F. Supp. 3d 1318 (S.D. Fla. 2019).

**4. Thompson v. Thompson is misspelled.** Cirion cites "*Thompson v. Thomspon*." [Cirion Br. at 39]. The case is *Thompson v. Thompson*, 237 Ga. 509 (1976).

**5. Emerson v. Lambert is materially overread.** Cirion presents *Emerson* as establishing that "only title ownership provides the enduring dominion that justifies liability" in the bailment context. [Cirion Br. at 27]. But *Emerson* is a dangerous-instrumentality case about vicarious liability for automobile entrustment. The Florida Supreme Court's statement that vicarious liability "will generally flow from legal title" was specific to that doctrine. Emerson did not purport to define the elements of a bailment claim, and it certainly did not hold that only a title owner may sue for bailment.

**6. Chubb and Meeks are overstated.** At most, *Chubb* and *Meeks* describe the ordinary structure of a bailment—owner/bailor and possessor/bailee. *Meeks* does so in a footnote contrasting bailment with abandonment. Neither case squarely holds that a title holder is the *only* plaintiff who may ever maintain a bailment claim. Cirion converts descriptive language about the standard bailment relationship into a sweeping exclusivity rule the cases themselves do not announce.

These errors, taken individually, might be dismissed as carelessness. Taken together, they raise a question about the reliability of Cirion's citation practices

throughout its brief—particularly when Cirion uses these very authorities to argue that GNM should be penalized for procedural lapses.

## **ARGUMENT**

### I. The Novation Agreements Transferred Property Rights, Not Merely Contract Rights

Cirion devotes the bulk of its Answer Brief to the proposition that title ownership is a prerequisite for a bailment claim. But Cirion ignores the most inconvenient fact in the record: *its own undisputed Statement of Material Facts establishes that GNM acquired all of Telegram's rights and duties through a series of novation agreements.*

Specifically, Paragraph 6 of Cirion's Statement of Undisputed Material Facts states: "Under the terms of the First Novation Agreement, *GNM succeeded Telegram Corp. and all rights and duties were assigned to GNM, which accepted the assignment of rights and duties.*" [DE:186, ¶6] (emphasis added). Cirion does not dispute this fact. It never has.

The legal significance of a novation is not, as Cirion suggests, merely that GNM had "the right to possess the Memory." [Cirion Br. at 32]. A novation extinguishes the original obligation and replaces it entirely with a new obligation running to the substituted party. See *Thompson v. Jared Kane Co., Inc.*, 872 So. 2d 356, 361 (Fla. 2d DCA 2004) ("A novation is a mutual agreement between the

parties for the discharge of a valid existing obligation by the substitution of a new valid obligation."). When "all rights and duties" are assigned, *that includes property rights* associated with those duties. See also *Aronowitz v. Health-Chem Corp*., 513 F.3d 1229, 1237 (11th Cir. 2008) (quoting *Jakobi v. Kings Creek Village Townhouse Ass'n,* 665 So. 2d 325, 327 (Fla. 3d DCA 1995)).

Here, GNM did not merely acquire a contract to receive services. GNM stepped into Telegram's shoes entirely, becoming the party to the colocation arrangement, the party with the right of access, the party responsible for maintaining the servers and memory, and the party with the right to control those assets. Under the novation, Telegram's relationship with the data center was extinguished and replaced by GNM's. This is not mere "possession"—it is the full spectrum of rights that an owner-operator exercises over property entrusted to a bailee.

Cirion's Answer Brief (at 31) attempts to dismiss this argument as "raised for the first time on appeal." That is wrong. The novation agreements were central to every iteration of this case—they were pleaded in every complaint, acknowledged by Cirion in its own Statement of Material Facts, and formed the basis of this Court's prior opinion. See *Glob. Network Mgmt*. I, 67 F.4th at 1315-16. The legal significance of those novations for the ownership issue is not a new

theory; it is an argument about the legal effect of undisputed, already-litigated facts.

Cirion's cited authorities actually support GNM's position when properly analyzed. In *Sirpal v. University of Miami*, 684 F. Supp. 2d 1349, 1364 (S.D. Fla. 2010), the plaintiff lost on bailment as to research he created because his ***employment contract transferred ownership to the University***. But *Sirpal* won on bailment as to the ***physical binders and devices*** he owned. The distinction was between property the contract transferred away and property it did not. Here, the novation agreements transferred property *to* GNM, not away from it. GNM's position is analogous to the binders *Sirpal* retained, not the research he forfeited.

Similarly, in *Armored Car Serv., Inc. v. First Nat'l Bank of Miami*, 114 So. 2d 431, 434 (Fla. 3d DCA 1959)—which Cirion attempts to distinguish [Cirion Br. at 29]—the court found bailment proper because the plaintiff "had reimbursed the school and had succeeded to the school's rights." That is precisely what happened here: through novation, GNM succeeded to Telegram's rights, and when the memory was stolen, GNM replaced it at its own expense. The case supports GNM, not Cirion.

Cirion's remaining cases are distinguishable because in each, the plaintiff was a complete stranger to the property. In *Potts*, the plaintiff had neither title nor possession. In *Fagan*, the plaintiff had relinquished title to advance fees. In C*hubb*

*Seguros*, the plaintiff-insurer never possessed the cargo. In *Coventry*, the trust failed to allege ownership during the relevant period. None involved a party who, like GNM, had stepped into the owner's shoes through a novation of "all rights and duties."

Nor is *Emerson v. Lambert*, 374 So. 3d 756 (Fla. 2023), on point. As noted in the Preamble, *Emerson* addressed vicarious liability under the dangerous-instrumentality doctrine—a wholly different legal context. The court's holding says nothing about bailment, a doctrine rooted in the delivery, possession, and duty to return personal property.

At minimum, the novation agreements create a genuine dispute of material fact regarding GNM's property interest in the memory. The district court should not have resolved this question on summary judgment where the undisputed facts—acknowledged by Cirion itself—show that "all rights and duties" were transferred to GNM.

## II. Equitable Subrogation Need Not Be Pled Under Florida Law

Cirion's Answer Brief argues [Cirion Br. at 32-34] that GNM "waived" its equitable subrogation argument by failing to plead it. This argument ignores controlling Florida authority holding that equitable subrogation need not be pled and may be raised at any stage of the proceedings.

In *Dade Cty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638 (Fla. 1999), the Florida Supreme Court considered a case where equitable subrogation was raised for the first time in post-trial motions. The Third District Court of Appeal, affirmed by the Supreme Court, held that relief was proper even though equitable subrogation was never raised in the pleadings or at trial. See also *Dade Cty. Sch. Bd. v. Radio Station WQBA*, 699 So. 2d 701, 703 (Fla. 3d DCA 1997).

Likewise, in *Kala Invest., Inc. v. Sklar*, 538 So. 2d 909 (Fla. 3d DCA 1989), the Third District held that equitable subrogation need not be pled and could be raised for the first time in a reply brief to a motion for summary judgment. And in *Transp. Int'l Pool, Inc. v. Lyons*, 609 So. 2d 658, 663 (Fla. 4th DCA 1992), the Fourth District reversed summary judgment and remanded to allow the plaintiff to amend its complaint to seek equitable subrogation—relief the plaintiff had never previously raised.

Cirion dismisses these cases as "Florida state cases" that "do not speak to the pertinent federal standard for pleading." [Cirion Br. at 34 n.3]. But Cirion misapprehends the nature of the issue. Equitable subrogation is a substantive doctrine of Florida law, not a federal procedural rule. Whether equitable subrogation must be pled is governed by the substantive law of the forum state, not by the Federal Rules. See *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Because Florida law governs the bailment claim, Florida law also governs whether

equitable subrogation—an equitable doctrine operating by implication of law—must be specifically pled. Cirion cites no Eleventh Circuit authority to the contrary.

Critically, the district court's own Supplemental Order [DE:202] *sua sponte* raised the ownership issue after the summary judgment motions were already filed. GNM was responding to a new question posed by the court, not ambushing Cirion. If the court could raise ownership *sua sponte* in supplemental briefing, it defies logic to hold that GNM could not respond with a recognized legal theory to address that very question.

Moreover, Cirion had actual notice of the subrogation theory. Mr. Vedeneev's deposition testimony—which Cirion took and relies upon extensively—established the factual predicate: that GNM replaced the memory at its own expense to protect its business relationship with Telegram. [DE:186-3]. Cirion cannot credibly claim surprise from a legal theory grounded in testimony it elicited.

At the very least, the district court should have granted GNM leave to amend to assert equitable subrogation, as the Fourth District required in *Lyons*. See also *Hart Properties, Inc. v. Slack*, 159 So. 2d 236 (Fla. 1963) (where record indicates existence of valid cause of action or defense not pleaded, entry of summary judgment must be with leave to amend).

### III. GNM Was Not a Volunteer

Cirion argues [Cirion Br. at 34-36] that equitable subrogation cannot apply because GNM was a "volunteer" who had no legal duty to replace the memory.

**Cirion distorts the record.**

The Florida Supreme Court has held that equitable subrogation extends beyond those who are "legally bound" to make payment. In *Dade County School Board*, the court found that the right of subrogation "is not necessarily confined to those who are legally bound to make payments, but extends as well to persons who pay the debt in self-protection, since they might suffer loss if the obligation is not discharged." 699 So. 2d at 703 (emphasis added).

The Florida Supreme Court further explained in *Underwriters at Lloyds v. City of Lauderdale Lakes*, 382 So. 2d 702, 704 (Fla. 1980), that equitable subrogation is "founded on the proposition of doing justice without regard to form." The doctrine is designed to prevent injustice—it is not confined to situations where the paying party had a strictly "legal" duty.

Mr. Vedeneev's testimony was that GNM had a *business obligation* to replace the memory: "Telegram Messenger, our client, lost their memory cards, and GNM, in order to cover for that, bought at their own expense, at their own expense the memory cards and installed them." [DE:203:5]. GNM paid to protect

its ongoing business relationship with its client, Telegram. That is payment "in self protection" under *Dade County School Board*—not a voluntary, charitable act.

Cirion isolates one interrogatory answer ("Was GNM legally obligated to reimburse the owner?" "No.") and declares the issue resolved. But the five-factor equitable subrogation test does not require strict "legal" obligation—it requires that the subrogee (1) made the payment to protect its own interest, (2) did not act as a volunteer, (3) was not primarily liable for the debt, (4) paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party. See *Eastern Nat'l Bank v. Glendale Fed. Sav. & Loan Ass'n*, 508 So. 2d 1323, 1324-25 (Fla. 3d DCA 1987).

On these undisputed facts, GNM satisfies the test: (1) it paid to protect its business relationship with Telegram; (2) it was not a volunteer—it was the party contractually responsible for maintaining and servicing the equipment; (3) it was not primarily liable for the theft; (4) it paid the full replacement cost; and (5) subrogation works no injustice to Telegram, which has been made whole.

At minimum, whether GNM acted as a "volunteer" or in "self-protection" is a question of fact that should have been resolved by a jury, not on summary judgment.

**[SPACE LEFT BLANK OF STYLISTIC REASONS]**

## IV. The District Court Itself Recognized This Case Should Go to a Jury

Cirion's Answer Brief presents this case as a simple, clear-cut matter of law. The record tells a different story. At the March 12, 2024 hearing on the first cross-motions for summary judgment, the district court made the following observations:

> "I will say I think the bailment argument on summary judgment is *hard*, Mr. Dimond, given what the Eleventh Circuit did to this case. You called it 'nuanced.' I call it hard." [DE:221:75].
>
> "I think it really is going to come down to what kind of bailment it is; and then is there sufficient evidence on the record to let it go to the jury on the negligence issue. I know there's a lot of arguments, but that's really what it is." [DE:221:76].

The district court believed this case was headed to a jury on the bailment merits. It said so in open court. The only reason the case did not proceed to trial was that GNM Ltd.'s dissolution—raised by Cirion for the first time at oral argument on the first summary judgment motion—derailed the proceedings into over a year of collateral litigation about corporate succession.

This Court should consider how the case arrived at its ultimate disposition. The District Court did not grant summary judgment on the merits of the bailment claim as briefed by the parties. Instead, the court raised the ownership issue *sua sponte* through its Supplemental Order [DE:202], pursuant to Fed. R. Civ. P. 56(f), citing cases that had never been briefed by either party. GNM was given one week to respond to a question the court formulated on its own initiative. When GNM

provided a seven-page supplemental brief with legal authority, the court dismissed it as “devoid of any thoughtful analysis.” [DE:210:6].

The effect was to grant summary judgment on a theory that Cirion never raised in its own summary judgment motion—that ownership, as opposed to damages, was the dispositive issue. Cirion’s motion raised GNM’s non-ownership only in the context of damages (arguing GNM voluntarily assumed its costs). The court converted this into an element-of-the-claim argument on its own. Whatever deference is owed to a district court’s management of its docket, summary judgment should not be granted on a theory the movant did not advance, on the basis of supplemental briefing ordered *sua sponte*, without affording the non-movant adequate opportunity to develop the record.

Cirion makes much of GNM’s procedural missteps in this litigation. But the core question before this Court is whether the District Court correctly concluded, as a matter of law, that GNM’s undisputed possession of and contractual responsibility for the memory—acquired through novation of “all rights and duties”—was insufficient to support a bailment claim. Given the district court’s own assessment that the bailment issue was “hard” and likely a jury question, the answer should be no.

## CONCLUSION

For the foregoing reasons, and because genuine disputes of material fact remain on both GNM's property interest (via novation) and its equitable-subrogation rights, Global Network Management, Inc. respectfully requests that this Court reverse the district court's grant of summary judgment and remand for trial on GNM's implied bailment claim.

Respectfully submitted,

Law Offices of Andre G. Raikhelson, LLC.
7000 W. Palmetto Park Road, Suite 1240
Boca Raton, Florida 33431
Tel. 954-895-5566
Primary: arlaw@raikhelsonlaw.com

/s/ Andre G. Raikhelson
Andre G. Raikhelson, Esq.
Bar Number: 123657

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with F. R. App. 32 in which this Reply Brief contains no more than 6,500 words [3,244 words are used] and uses Times New Roman 14-point typeface.

/s/ Andre G. Raikhelson

Florida Bar No. 123657

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system. I also hereby certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Andre G. Raikhelson, Esq.
Andre G. Raikhelson, Esq.